# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| IN RE:  WHOLESALE GROCERY PRODUCTS ANTITRUST LITIGATION | Civil Action No. 09-md-02090 ADM/TNL<br><br>MDL No. 2090 |
| THIS DOCUMENT RELATES TO:<br><br>*All Actions except JFM Market, Inc. and MFJ Market, Inc. (Village Market) v. SuperValu, Inc.* | |

## MIDWEST PLAINTIFFS' MEMORANDUM IN SUPPORT OF OMNIBUS MOTION IN LIMINE

**TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................ 1

II.   LEGAL ARGUMENT ....................................................................................... 1

A.   MIL NO. 1: THE COURT SHOULD ISSUE AN AFFIRMATIVE RULING THAT MIDWEST PLAINTIFFS' CLASS REPRESENTATIVE D&G CAN USE A DEMONSTRATIVE VIDEO OF HIS STORE, GARY'S FOODS IN MT. VERNON, IA, TO ACCOMPANY LIVE TESTIMONY IN LIEU OF A JURY VISIT. ................................................................................................ 1

B.   MIL NO. 2:  THE COURT SHOULD PRECLUDE ANY REFERENCE TO AND EVIDENCE OF JUSTIFICATIONS FOR AND ALLEGED EFFICIENCIES RESULTING FROM C&S'S CONSPIRACY BECAUSE THEY ARE IRRELEVANT AND PREJUDICIAL IN A *PER SE* CASE ........................................................... 4

C.   MIL NO. 3:  THE COURT SHOULD PRECLUDE ANY REFERENCE TO RETAILERS' OTHER SUPPLY OPTIONS ON THE GROUNDS THAT IT IS IRRELEVANT AND PREJUDICIAL ................................................................................................ 8

D.   MIL NO. 4:  THE COURT SHOULD PRECLUDE ANY REFERENCE OR TESTIMONY REGARDING THE SUBSTANCE OR MERITS OF ANY EXPERT'S TESTIMONY IN PRIOR CASES ................................................................................................ 9

E.   MIL NO. 5:  THE COURT SHOULD ALLOW FOR THE INTRODUCTION OF THE EXISTENCE OF SUPERVALU'S SETTLEMENT IN THIS CASE BUT PRECLUDE REFERENCE TO THE SETTLEMENT'S AMOUNT ...................................................... 11

F.   MIL NO. 6: THE COURT SHOULD EXCLUDE EVIDENCE THAT HAS NOT BEEN DISCLOSED TO PLAINTIFFS AND EXCLUDE WITNESSES NOT PREVIOUSLY DISCLOSED IN THE REQUIRED DISCOVERY DISCLOSURES ............................................. 13

G.   MIL NO. 7: THE COURT SHOULD INSTRUCT THE JURY THAT C&S AND SUPERVALU HAVE AT ALL RELEVANT TIMES BEEN COMPETITORS IN THE BUSINESS OF PROVIDING WHOLESALE GROCERY PRODUCTS AND SERVICES. .................... 16

H.	MIL NO. 8:  THE COURT SHOULD INSTRUCT THE JURY THAT IF PLAINTIFFS HAVE SUFFERED AN OVERCHARGE AS A RESULT OF THE ALLOCATION OF CUSTOMERS OR TERRITORIES ALONG GEOGRAPHIC LINES, THEN THEIR INJURY CONSTITUTES ANTITRUST INJURY. ................................... 18

III.	CONCLUSION ...................................................................................................... 19

## I.  INTRODUCTION

As described fully and in particular herein, Midwest Plaintiffs ("Midwest Plaintiffs" or "Plaintiffs") respectfully request that this Court exclude certain evidence from the trial of these actions under the Federal Rules of Evidence, and the authorities cited herein, because the evidence is irrelevant and/or unduly prejudicial to Midwest Plaintiffs, or for affirmative rulings or jury instructions on certain evidence because such rulings would materially aid the jury and/or are based on admissible evidence.

## II.  LEGAL ARGUMENT

### A.  <u>MIL NO. 1: THE COURT SHOULD ISSUE AN AFFIRMATIVE RULING THAT MIDWEST PLAINTIFFS' CLASS REPRESENTATIVE D&G CAN USE A DEMONSTRATIVE VIDEO OF HIS STORE, GARY'S FOODS IN MT. VERNON, IA, TO ACCOMPANY LIVE TESTIMONY IN LIEU OF A JURY VISIT.</u>

Plaintiff class representative D&G Inc. d/b/a Gary's Foods has prepared a demonstrative video to be introduced by D&G's principal, Denny Dietrich, to assist his live testimony.  Gary's Foods is located in Mt. Vernon, IA, a four and a half hour drive from Minneapolis, approximately 400 miles away.  The video is necessary to demonstrate several material facts that could not otherwise be effectively demonstrated through trial testimony.  Mr. Dietrich's store, Gary's Foods in Mount Vernon, Iowa, is a small-town grocery store, and stocks the four major categories of grocery products at issue in this case. D&G's store size and layout is typical of Class members, as is its amount of limited storage space requiring three shipments per week from its wholesaler.  The video depicts day-to-day activities of Mr. Dietrich and D&G employees, and provides a visual depiction of the store's departments, food categories, and storage space.

- 1 -

The Eighth Circuit has not articulated a specific rule regarding the admissibility of these types of videos, but decisions from other circuits are instructive. *See, e.g., Slakan v. Porter*, 737 F.2d 368, 378 (4th Cir. 1984) (videotape demonstrating power of water hose shown along with the expert testimony of a fireman), *cert. denied*, 470 U.S. 1035 (1985); *Szeliga v. General Motors Corp.*, 728 F.2d 566, 567–68 (1st Cir. 1984) (videotapes demonstrating wheels crashing into cement wall shown in conjunction with expert's testimony about cause of accident). A recent in-circuit district court decision affirms this approach. *See Ribeiro v. Baby Trend, Inc.*, No. 8:12CV204, 2017 WL 1393088, at *3 (D. Neb. Apr. 17, 2017) (rejecting defendants' motion to exclude day-in-the-life video as prejudicial because "[Rule 403] does not offer protection against evidence that is merely prejudicial in the sense of being detrimental to a party's case. The rule protects against evidence that is unfairly prejudicial.") (quoting *United States v. McCourt*, 468 F.3d 1088, 1092 (8th Cir. 2006)).

Such films are frequently used at trial in conjunction with live testimony. *Donathan v. Orthopaedic & Sports Med. Clinic, PLLC*, No. 4:07-CV-18, 2009 WL 3584263, at *12 (E.D. Tenn. Oct. 26, 2009). The combination of the video with live testimony by the witness eliminates any hearsay concerns because the witness who verifies and uses the film is subject to cross-examination. *Grimes v. Employers Mut. Liability Ins. Co. of Wisconsin*, 73 F.R.D. 607, 610 (D. Alaska 1977).

Videos can serve as substitutes for jury visits. *See, e.g.*, *Rooney v. Sprague Energy Corp.*, 519 F. Supp. 2d 110, 122 (D. Me. 2007) (admitting video of facility over foundation and prejudice objections). The trial for this case is venued in Minneapolis, Minnesota and

the video depicts D&G's store Gary's Foods in Mt. Vernon, Iowa a four-and-a-half-hour drive nearly 300 miles away. A jury visit is impractical.  Videos of the type proposed here are admissible because they help the jury understand the parties' contentions. *See id.* "Such visual evidence, in conjunction with the parties' expected testimonies and cross-examination . . . [are] sufficient to inform the jury on the facts at issue." *Marquez v. Casa Espana en Puerto Rico*, 104 F.Supp.3d 186, 188 (D. P.R. 2015) (denying defendant's request to conduct a jury view because defendant had not shown why the "substantial equivalent of a jury view [could]not be obtained through other, less onerous means, such as the presentation of a videotape of the area"). A jury view or video can "demonstrate the operation and appearance of the stores under actual marketplace conditions." *Sam's Wines & Liquors v. Wal-Mart Stores,* No. 92-C-5170, 1994 WL 529331, at *13  (N.D. Ill. Sept. 27, 1994) (denying field trip in trademark case). Videos are less burdensome to a court's time and resources than an on-site tour and present evidence just as effectively. *Id*. (advantage of trip can be obtained in "nearly the same measure" from video); *Rooney*, 495 F.Supp. at 137. The video is an effective way of helping the jury understand a typical store of the Class members and the store of the named class representative who has been a part of this case since its inception. It is the next best option in lieu of a jury visit.  Given that the demonstrative will be used directly by the witness, and that the witness will be subject to cross examination, Defendant is not prejudiced by its use.  For these reasons, the demonstrative video should be allowed to be used by Mr. Dietrich during his live testimony in lieu of a jury visit.

**B.**   **MIL NO. 2:  THE COURT SHOULD PRECLUDE ANY REFERENCE TO AND EVIDENCE OF JUSTIFICATIONS FOR AND ALLEGED EFFICIENCIES RESULTING FROM C&S'S CONSPIRACY BECAUSE THEY ARE IRRELEVANT AND PREJUDICIAL IN A *PER SE* CASE**

The Court should preclude any attempt by C&S to introduce evidence regarding justifications, alleged efficiencies, and pro-competitive effects (if any) of its antitrust violation. Such evidence is entirely irrelevant as a matter of law in this *per se* case.

Plaintiffs intend to prove all of the factual predicates necessary for the jury to find that C&S committed a *per se* violation of Section 1 of the Sherman Act—*i.e.*, that C&S and its competitor, SuperValu, agreed to divide territory and customers along geographic lines.  If the jury finds that Plaintiffs have proven those factual predicates of a *per se* claim, then it will proceed to decide whether Plaintiffs have proven the other elements necessary to recover damages under Section 4 of the Clayton Act, *i.e.,* impact, antitrust injury, and measure of damages.  Plaintiffs do not intend to prove or argue to the jury that C&S's conduct constitutes a rule-of-reason violation of the Sherman Act. Thus, if the jury finds that Plaintiffs have not proven the factual predicates of a *per se* violation, the case is over.

The evidence C&S intends to offer (and its related proposed jury instruction) of justifications for, alleged efficiencies of, and any pro-competitive effects of its antitrust violation is relevant only to a rule-of-reason violation of the Sherman Act. It is irrelevant as a matter of law in the trial of a *per se* claim.

There is no doubt what Plaintiffs claim and intend to prove. The draft jury instructions Plaintiffs sent to C&S on March 19, 2018 ask the jury to determine whether Plaintiffs' evidence supports finding that C&S committed a *per se* violation of Section 1

- 4 -

of the Sherman Act. Plaintiffs are not alleging and do not intend to prove a rule-of-reason violation in the alternative.

The Court of Appeals succinctly articulated Plaintiffs' case: "The crucial factual question here [is] [w]hat are the terms of the allegedly anticompetitive agreement?" *In re Wholesale Grocery Prod. Antitrust Litig. (D&G, Inc. v. SuperValu, Inc.)*, 752 F.3d 728, 733 (8th Cir. 2014). Plaintiffs are entitled to "all manner of extrinsic evidence to persuade a jury that what the wholesalers actually agreed to was a naked division of territory and customers, and [i]f a reasonable jury were to make this factual finding, then the wholesalers committed a *per se* antitrust violation." *Id.* at 734. The Court of Appeals disposed of C&S's argument here four years ago: it ruled that C&S is "not entitled to a summary determination that [its] agreement deserves rule-of-reason scrutiny." *Id.* at 733.

In *per se* cases such as this, agreements to restrain trade are "conclusively presumed to be unreasonable" without inquiry about the precise harm they have caused or the business excuse for their use. *N. Pac. Ry. Co. v. United States*, 356 U.S. 1, 5 (1958); *United States v. Misle Bus & Equipment Co.*, 967 F.2d 1227, 1235 n.4 (8th Cir. 1992) (no error in jury instruction stating same). Evidence and argument suggesting such an agreement was justified are therefore irrelevant. *La. Wholesale Drug Co. v. Hoechst Marion Roussel, Inc. (In re Cardizem CD Antitrust Litig.)*, 332 F.3d 896, 909 (6th Cir. 2003) ("[T]he law is clear that once it is decided that a restraint is subject to *per se* analysis, the claimed lack of any actual anticompetitive effects or presence of procompetitive effects is irrelevant."). This includes without limitation any reference to whether a conspiracy had little or no effect, whether resulting prices were reasonable, or whether a conspiracy was motivated

by good intentions, business necessity, or a desire to benefit the public. *See Misle Bus & Equipment Co.*, 967 F.2d at 1235 n.4 (no error in jury instruction stating that jury "need not be concerned with whether the agreement was reasonable or unreasonable, or the justifications for the agreement, or the harm done by it, and it is not a defense that the parties thereto may have acted with good motives, or may have thought that what they were doing was legal, or that the conspiracy may have had some good results"); *United States v. Suntar Roofing, Inc.*, 897 F.2d 469, 472-73 (10th Cir. 1990) (evidence of reasonableness or justification for a *per se* violation was properly excluded); *United States v. Brighton Bldg.*, 598 F.2d 1101, 1105-06 (7th Cir. 1979) (where defendants knowingly participate in *per se* conspiracy, contentions that the violations were justified or the conspiracy was ineffective are irrelevant); *Continental Baking Co. v. United States*, 281 F.2d 137, 143-44 (6th Cir. 1960) ("[A]ny evidence of justification or reasonableness after such an agreement has been established is properly excluded in a Sherman Act case. . . . Once the defendants admits the agreement he may say no more for it is illegal *per se*.").

Because justifications are irrelevant as a matter of law, any effort by C&S to refer to or admit evidence of efficiencies, effects, pro-competitive benefits, reasonableness, or any other justification is baseless. The *per se* rule simply does not permit for the balancing or consideration of pro-competitive justifications. *See Arizona v. Maricopa Cnty. Med. Soc'y*, 457 U.S. 332, 345, 351 (1982) (anticompetitive potential inherent in *per se* violation justifies facial invalidation even if pro-competitive justifications are offered); *United States v. Container Corp. of America*, 393 U.S. 333, n. 4 (1969) (stating that the "Sherman Act would soon be emasculated" and its "philosophy would be supplanted by one which is

wholly alien to a system of free competition" if defendants could present "ostensible justifications" for a *per se* violation)(citations omitted).   Accordingly, the Court should preclude the Defendants from attempting to excuse their illegal conduct with these irrelevant justifications.

And since it is irrelevant as a matter of law, it goes without saying that the probative value (here, none) of any such evidence would be completely outweighed by the unfair prejudice to Plaintiffs in the trial of their *per se* claim, confusion of the issues, and misleading the jury.  *See* Fed. R. Evid. 403; *Blancha v. Raymark Indus*., 972 F.2d 507, 516 (3d Cir. 1992) (stating that "evidence may be excluded when its admission would lead to litigation of collateral issues, thereby creating a side issue which might distract the jury from the main issues").  In determining the probative value of evidence under Rule 403, courts must consider "not only the extent to which it tends to demonstrate the proposition which it has been admitted to prove, but also the extent to which that proposition was directly at issue in the case." *Id.* (citation omitted).

Here, evidence of justifications and pro-competitive benefits is irrelevant to anything at issue in this case. Its introduction would unnecessarily extend the trial, confuse the issues, and mislead the jury as to the appropriate standard for determining *per se* liability.  For these reasons, evidence regarding justifications, alleged efficiencies, and pro-competitive effects, if any, of C&S's alleged antitrust violation should be excluded.

**C.     MIL NO. 3:  THE COURT SHOULD PRECLUDE ANY REFERENCE TO RETAILERS' OTHER SUPPLY OPTIONS ON THE GROUNDS THAT IT IS IRRELEVANT AND PREJUDICIAL**

The Court should preclude any attempt by C&S to introduce evidence regarding Plaintiffs' and class members' other supply options.  It is no defense to a *per se* violation that Plaintiffs could have purchased from another wholesaler when, in fact, they were purchasing from a wholesaler with whom C&S agreed to not to compete for customers. *See, e.g.*, *Westman Comm'n Co. v. Hobart Corp.*, 541 F. Supp. 307, 314-15 (D. Colo. 1982) (such a mitigation argument "implicitly assumes that [defendant] was guilty of a continuing violation of the antitrust laws, yet attempts to place the onus of stopping that violation on [plaintiff]. . . . [A] defendant cannot claim immunity from damages caused by its illegal actions because a plaintiff could have stopped them . . . .").

Precluding such references and evidence makes both logical and practical sense. For one, allowing Defendant to introduce evidence of other supply options in essence obliges Plaintiffs to mitigate or offset their damages by purchasing from other suppliers. But a plaintiff alleging a *per se* antitrust violation generally is not required to mitigate or offset its damages.  *See In re Airline Ticket Comm'n Antitrust Litig.*, 918 F. Supp. 283, 286 (D. Minn. 1996) ("In a horizontal price-fixing case, . . . mitigation and offset generally do not affect the ultimate measure of damages.").  For another, such arguments are inapplicable where, as here, a plaintiff does not know that it was paying an overcharge until the unlawful conspiracy to allocate customers and territories was revealed.  Put simply, an antitrust plaintiff cannot mitigate or offset damages that it does not know it is incurring.

Accordingly, the Court should preclude Defendant from making reference to or attempting to introduce evidence of Plaintiffs' and class member's supposed other supply options.

Alternatively, even if evidence of other suppliers were relevant—which it is not— C&S should be precluded from offering such evidence because any probative value is substantially outweighed by the danger of unfair prejudice to Plaintiffs, confusion of the issues, and misleading the jury. *See* Fed. R. Evid. 403; *Blancha*, 972 F.2d at 516. In determining the probative value of evidence under Rule 403, courts must consider "not only the extent to which it tends to demonstrate the proposition which it has been admitted to prove, but also the extent to which that proposition was directly at issue in the case." *Id.* (citation omitted). Here, reference to or evidence of other suppliers is irrelevant to Plaintiffs' claims and will unnecessarily extend the trial, confuse the issues, and mislead the jury as to the appropriate standard for determining *per se* liability and Plaintiffs' injury and damages. The jury would likely attempt to determine whether Plaintiffs could have or should have purchased from another supplier when the only relevant questions in this regard are whether Defendant committed an antitrust violation and whether Plaintiffs sustained damages. *See Westman Comm'n Co.*, 541 F. Supp. at 314-15.

### D. MIL NO. 4: THE COURT SHOULD PRECLUDE ANY REFERENCE OR TESTIMONY REGARDING THE SUBSTANCE OR MERITS OF ANY EXPERT'S TESTIMONY IN PRIOR CASES

Plaintiffs anticipate that Defendants may attempt to elicit testimony or commentary from one or more experts about the opinions and testimony which the expert has given in other cases. Because such testimony is of no probative value and carries a danger of unfair prejudice, jury confusion, and undue delay, it is properly excluded under Federal Rule of

Evidence 403.  For these reasons, such material is routinely precluded.  *See, e.g., Black & Decker Corp. v. Positec USA Inc.*, Case No. 11-cv-5426, 2015 WL 5612340, **12-13 (N.D. Ill. Sept. 22, 2015); *Brown v. Crown Equipment Corp.*, 445 F. Supp. 2d 59, 68 (D. Maine 2006).

Since it is virtually certain that C&S could not demonstrate that the issues presented in or the methodology used in prior cases are precisely the same as in this case, expert evidence in other cases could not be relevant or probative of the issues in this case, and would result in delay and confusion caused by mini-trials over the circumstances, similarities, and dissimilarities between the expert analyses in other cases and those proffered in this case.  Testimony is regularly precluded on such grounds.  *Ecolab USA Inc. v. Diversey, Inc.*, No. 12-CV-1984 SRN/FLN, 2015 WL 2353018, at *9 (D. Minn. May 15, 2015) (excluding testimony that "would result in a side trial that would cause delay and confusion that would outweigh any probative value of the evidence"); *Estate of Thompson v. Kawasaki Heavy Indus., Ltd.*, 933 F.Supp.2d 1111, 1152 (N.D. Iowa 2013) ("[A]llowing such evidence would, inevitably, result in delay, while the parties conduct a 'mini-trial' over the issues on which a party in a previous case sought to qualify Mr. Ezra as an expert, the extent to which he was offered as an expert on the same or different issues in this case and the previous case, any differences in his methodology or reasoning between this case and the previous case, and the precise scope and rationale for the previous court's exclusion.")).  Such testimony is routinely precluded, and should be precluded here.

**E.** **MIL NO. 5: THE COURT SHOULD ALLOW FOR THE INTRODUCTION OF THE EXISTENCE OF SUPERVALU'S SETTLEMENT IN THIS CASE BUT PRECLUDE REFERENCE TO THE SETTLEMENT'S AMOUNT**

The Court should allow Plaintiffs to introduce the fact of their settlement with SuperValu, but not the amount of the settlement. Federal Rule of Evidence 408 provides that evidence of a settlement is not admissible "to prove or disprove the validity or amount of a disputed claim," but it allows such evidence for other purposes. *See* Fed. R. Evid. 408 (a) & (b) (limiting use "to prove or disprove the validity or amount of a disputed claim" but allowing "another purpose"); *United States v. Wirtz*, No. CR-04-18, 2004 WL 2271745 at *4 (D. Minn. Sept. 25, 2004) (allowing evidence of a settlement to show knowledge or notice); *M.M. Silta v Cleveland-Cliffs, Inc*., 544 F Supp. 2d 828, 830-31 (D. Minn. 2008) (allowing to show business relationships and incentives); *In re Cathode Ray Tube (CRT) Antitrust Litig*., No. C-07-5944, 2016 WL 6216664 at *9-10 (N.D. Cal. Oct. 25, 2016) *citing Costco Wholesale Corp. v. AU Optronics Corp*., No. C13-1207RAJ, 2014 WL 4674390, at *6 (W.D. Wash. Sept. 17, 2014) (allowing evidence of the fact of a settlement but not the amount). In this case, the jury should be advised of *the fact* that SuperValu has settled with Plaintiffs to avoid any misleading "empty chair" defense arguments and juror speculation on why SuperValu is not a Defendant in the trial. Even though it has settled, SuperValu is a key player in Plaintiffs' case at trial; Plaintiffs will show that C&S and SuperValu conspired with each other to reduce or eliminate competition in the Midwest by agreeing to divide territory and customers along geographic lines.

In addition, to the extent that C&S intends to shift culpability toward SuperValu and away from itself by, for instance, repeatedly referring to SuperValu overcharges, it is important that the jury be told that the reason SuperValu is not present is because it has settled with Plaintiffs. This is necessary to avoid jury confusion and prejudice to Plaintiffs.

Furthermore, C&S's former president and CFO, Mark Gross, who Plaintiffs contend was C&S's principle negotiator of its deal with SuperValu, now is SuperValu's CEO. Plaintiffs intend to call Mr. Gross to testify live at trial, and unless jurors are told that SuperValu has settled, they almost certainly will be confused by Mr. Gross's key involvement in the deal while at C&S, his executive role in both companies, and SuperValu's unexplained absence as a party. Plaintiffs would be substantially prejudiced by such confusion.

At the same time, courts carefully avoid the unfair prejudice to plaintiffs which would be created by disclosing the *amount* of any settlements. *E.g., Dahlgren v. First Nat'l Bank of Holdrege*, 533 F.3d 681, 700 (8th Cir. 2008) ("[The] district court took steps to avoid unfair prejudice by excluding the amounts of the settlements . . . ."). Settlement amounts are excluded because "the amount of settlement has far less probative value and has greater prejudicial risk." *Cathode Ray Tube Antitrust*, 2016 WL 6216664 at *9. "[T]here is a significant risk that disclosure of the settlement amounts would anchor or buoy the jury's consideration of [the plaintiff's] damages, which is among the reasons that settlement discussions are presumptively inadmissible." *Costco*, 2014 WL 4674390, at *5. In this case, the fact of SuperValu's settlement should be allowed, but the amount of the

settlement should be excluded so as not to unduly affect the jury's consideration and deliberation of damages.

**F.    MIL NO. 6: THE COURT SHOULD EXCLUDE EVIDENCE THAT HAS NOT BEEN DISCLOSED TO PLAINTIFFS AND EXCLUDE WITNESSES NOT PREVIOUSLY DISCLOSED IN THE REQUIRED DISCOVERY DISCLOSURES**

The parties have exchanged exhibit lists and filed their witness lists pursuant to the Court's pre-trial deadlines. ECF No. 900. Discovery in this case was completed in early 2016. ECF No. 653. To prevent trial by ambush, Plaintiffs request that defense evidence and defense witnesses not properly disclosed in discovery be excluded from this trial.

Plaintiffs sought agreement from C&S on this issue, but a dispute regarding the interpretation of the Court's order regarding impeachment exhibits prevented the parties from reaching agreement. Two weeks ago, on March 12, 2018, Plaintiffs learned from Judge Montgomery's courtroom deputy that exhibits that the parties intend to use solely for impeachment should be marked and included on the parties' exhibit lists with exhibits intended to be admitted as evidence. If used at trial solely for impeachment, the exhibit will be marked as a "court exhibit." Plaintiffs followed this procedure in the Draft Exhibit List provided to C&S by mutual agreement on March 19. In meeting and conferring with C&S counsel regarding exhibit objections, Plaintiffs learned that C&S did not mark and include on its exhibit list documents intended to be used for impeachment. Plaintiffs communicated to C&S counsel multiple times the guidance received from the Court regarding impeachment documents, but C&S said it did not intend to include impeachment documents on its exhibit list. Despite being told several days prior to the deadline to file

exhibit lists that impeachment exhibits should be included on exhibit lists to be filed and being told that Plaintiffs' exhibit list included impeachment documents, C&S refused to supplement its exhibit list to do the same. The Court has since reiterated that impeachment materials should be included on exhibit lists, and C&S has so acknowledged, but has not exchanged an exhibit list that includes impeachment materials.

A party that has failed to disclose information required by Rule 26(a) or (e) may not use the late- or undisclosed material at a trial, hearing, or motion unless such failure is harmless or substantially justified. *Transclean Corp. v. Bridgewood Services, Inc.*, 101 F. Supp.2d 788, 795-96 & 800 (D. Minn. 2000). Further, a party's evidence may be precluded on an issue affected by its unduly late disclosure. *See Global Traffic Tech. v. Tomar Elect.*, No. 05-756, 2008 WL 6397825 at *2 (D. Minn. Oct. 1, 2008) (precluding evidence or argument on certain topics with disclosure issues); *id.* at *3 (excluding "evidence or testimony from any witness" on separate issue affected by untimely disclosure); *cf. Thomas v. City of St. Paul*, No. 06-2860, 2007 WL 7651926 at *1 (D. Minn. May 18, 2007) (limiting expert report use based on late report service). Defense evidence not properly disclosed should be excluded from this trial.

In addition, pursuant to Federal Rule of Civil Procedure 37(c), Plaintiffs request that the Court exclude witnesses that Defendant C&S has not previously disclosed in its Rule 26(a) disclosures. "When a party fails to provide information or identify a witness in compliance with Rule 26(a) or (e), the district court has wide discretion to fashion a remedy or sanction as appropriate for the particular circumstances of the case." *Wegener v. Johnson*, 527 F.3d 687, 692 (8th Cir. 2008); *Trost v. Trek Bicycle Corp.*, 162 F.3d 1004,

1008 (8th Cir. 1998) ("'A party that . . . fails to disclose information required by Rule 26(a) . . . shall not be permitted to use [the nondisclosed information] as evidence at a trial, at a hearing, or on a motion' 'unless such failure is harmless' or there was 'substantial justification' for the failure.") (alteration in original) (citing Fed. R. Civ. P. 37(c)(1)); *Admiral Theatre Corp. v. Douglas Theatre Co.*, 585 F.2d 877, 897-98 (8th Cir. 1978) ("The power of the trial court to exclude exhibits and witnesses not disclosed in compliance with its discovery and pretrial orders is essential to the judicial management of a complex case."). A motion *in limine* can be used to raise a Rule 37(c) sanction (excluding evidence) for the failure to make proper discovery and pretrial disclosures. *See Patterson v. Balsamico*, 440 F.3d 104, 116-18 (2d Cir. 2006) (upholding grant of motion *in limine* to preclude testimony of defense witness identified only shortly before trial under Rule 37(c)(1)); *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001)(Rule 37(c)(1) preclusion is appropriate where a party seeks to call a witness not previously disclosed under the Rule 26(a) required disclosures); *Cf. Sylla-Sawdon v. Uniroyal Goodrich Tire Co.*, 47 F.3d 277, 282–284 (8th Cir. 1995) (upholding partial grant of motion *in limine* precluding portion of witness's testimony as a sanction for proponent's failure to comply with the district court's scheduling order).

Pursuant to Federal Rule of Civil Procedure 37(c), Plaintiffs request the Court exclude from this trial defense evidence and defense witnesses not properly disclosed by Defendant in the required discovery disclosures.

- 15 -

### G. MIL NO. 7: THE COURT SHOULD INSTRUCT THE JURY THAT C&S AND SUPERVALU HAVE AT ALL RELEVANT TIMES BEEN COMPETITORS IN THE BUSINESS OF PROVIDING WHOLESALE GROCERY PRODUCTS AND SERVICES.

The Court should instruct the jury that C&S and SuperValu have at all relevant times been competitors in the business of providing wholesale grocery products and services. As an initial matter, C&S has already admitted in its interrogatory responses that SuperValu was its competitor in the provision of wholesale grocery products and services. *See also* C&S 30(b)(6) Deposition (C&S Vice President of Sales, James Saia), Sept. 29, 2011, 196:5-12, Expert Report of J. Leitzinger in Support of Plaintiffs' Motion for Class Certification (Ex. 3) [ECF No. 612-4] (testified that SuperValu was C&S's "largest" and "closest" competitor in the Northeast)*; In re Wholesale Grocery Prod. Antitrust Litig.,* 752 F.3d at 729 ("Before June 2002, SuperValu was C & S's "largest" and "closest" competitor in New England, where C & S was the primary wholesaler).

In a civil case, the Federal Rules of Evidence permit a court to determine that a fact is sufficiently undisputed to be judicially noticed and requires the court to instruct the jury to accept the noticed fact as conclusive. Fed. R. Evid. 201(f). Here, the requirements of Fed. R. Evid. 201 are met.

First, the fact of competition between C&S and SuperValu is an adjudicative fact governed by Rule 201. Competition is a fact which concerns the parties to this dispute and is helpful in determining the proper outcome in the case. Competition between conspirators is relevant to proving a *per se* violation of Section 1. *Accord Roberts v.*

*Sunbelt Rentals, Inc.*, No. 5:14-CV-00040, 2016 WL 1259414, at *13 (W.D. Va. Mar. 30, 2016) (describing adjudicative facts as "facts of the particular case").

Second, that C&S and SuperValu have at all relevant times been competitors in the business of providing wholesale grocery products and services is a fact "that is not subject to reasonable dispute" because it "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Here, the record is replete with evidence that C&S and SuperValu competed for customers. Such a fact is of the type susceptible to judicial notice under Fed. R. Evid. 201(b). *Cf. Alizai v. MVM, Inc.*, 40 F. Supp. 2d 752, 757 (E.D. Va. 1998) (taking judicial notice of fact of Oklahoma City bombing but not purported reaction to the situation because one could be determined accurately and readily while the other was subject to dispute).

Third, the Court "must take judicial notice if a party requests it and the court is supplied with the necessary information," which in the context of a civil case means "the court must instruct the jury to accept the noticed fact as conclusive." Here, that means that the jury should be instructed that at all relevant times C&S and SuperValu were competitors in the provision of wholesale grocery products and services. *Accord State Bank of Texas v. Parabia*, No. 14-CV-3031-L-KSC, 2017 WL 4102391, at *2 (S.D. Cal. Sept. 15, 2017), *objections overruled*, No. 14-CV-3031-L-KSC, 2017 WL 6471047 (S.D. Cal. Dec. 19, 2017).

For these reasons, the Court should instruct the jury that C&S and SuperValu at all relevant times were competitors in the business of providing wholesale grocery products and services.

**H.   MIL NO. 8:  THE COURT SHOULD INSTRUCT THE JURY THAT IF PLAINTIFFS HAVE SUFFERED AN OVERCHARGE AS A RESULT OF THE ALLOCATION OF CUSTOMERS OR TERRITORIES ALONG GEOGRAPHIC LINES, THEN THEIR INJURY CONSTITUTES ANTITRUST INJURY.**

The Court should instruct the jury that if Midwest Plaintiffs prove that there has been an overcharge as a result of the allocation of customers or territories along geographic lines, such an overcharge constitutes antitrust injury.

To recover damages, "Plaintiffs must prove antitrust injury, which is to say injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful." *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977).  The Supreme Court has explained that this "injury should reflect the anticompetitive effect either of the violation or of anticompetitive acts made possible by the violation. In short, it should be 'the type of loss that the claimed violations . . . would be likely to cause.'" *Id.* (quoting *Zenith Radio Corp. v. Hazeltine Research*, 395 U.S. 100, 125 (1969) (alterations in original).

A proven overcharge constitutes antitrust injury.  *See Illinois Brick Co. v. Illinois*, 431 U.S. 720, 746 (1977) (holding that direct purchasers are considered "to be injured to the full extent of the overcharge paid by them"); *see also In re Wyoming Tight Sands Antitrust Cases*, No. 85-2349, 1990 WL 155542, at *10 (D. Kan. Sept. 6, 1990). Overcharges also constitute antitrust injury in the context of *per se* violations of the Sherman Act.  *Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 107 (2d Cir. 2007).

- 18 -

Midwest Plaintiffs are entitled to a jury instruction on antitrust injury that fits their theory of the case. *Florists' Nationwide Tel. Delivery Network—Am.'s Phone-Order Florists, Inc. v. Florists' Tel. Delivery Ass'n*, 371 F.2d 263, 270 (7th Cir. 1967) ("A party is entitled to instructions presenting [its] theory of the case if there is evidence to support it."). Here, where the only alleged damage is the overcharge stemming from a *per se* violation of the Sherman Act, a jury instruction that a proven overcharge would satisfy the required antitrust injury element would materially aid the jury in applying the correct standard and avoid confusion. Clear jury instructions on the types of injury required sufficient to constitute antitrust injury have been found to aid juries in similar antitrust contexts. *See, e.g.*, *Hecht v. Pro-Football, Inc.*, 570 F.2d 982, 993 (D.C. Cir. 1977) (instructing district court on remand to formulate jury instructions that clearly delineate that injury to either business or property constitutes antitrust injury); *White v. Nat'l Football League*, 822 F. Supp. 1389, 1410 n.32 (D. Minn. 1993) (describing helpful jury instructions "setting forth antitrust injury alleged by plaintiffs").

For these reasons, the Court should instruct the jury that if Midwest Plaintiffs prove that there has been an overcharge as a result of the allocation of customers or territories along geographic lines, such an overcharge constitutes antitrust injury.

## III.   CONCLUSION

For these reasons, Plaintiffs respectfully request that the Court grant their motions *in limine*.

Dated: March 26, 2018                    Respectfully submitted,

                                         LOCKRIDGE GRINDAL NAUEN P.L.L.P.


                                         s/ W. Joseph Bruckner
                                         W. Joseph Bruckner (#147758)
                                         Elizabeth R. Odette (#0340698)
                                         Kristen G. Marttila (#0346007)
                                         Kate M. Baxter-Kauf (#392037)
                                         100 Washington Avenue South, Suite 2200
                                         Minneapolis, MN 55401
                                         Tel:   (612) 339-6900
                                         Fax:   (612) 339-0981
                                         wjbruckner@locklaw.com
                                         erodette@locklaw.com
                                         kgmarttila@locklaw.com
                                         kmbaxter-kauf@locklaw.com

                                         Richard B. Drubel
                                         Matthew J. Henken
                                         BOIES, SCHILLER & FLEXNER LLP
                                         26 South Main Street
                                         Hanover, NH 03755
                                         Tel:   (603) 643-9090
                                         Fax:   (603) 643-9010
                                         rdrubel@bsfllp.com
                                         mhenken@bsfllp.com

                                         Daniel A. Kotchen
                                         Daniel L. Low
                                         KOTCHEN & LOW LLP
                                         1745 Kalorama Road NW, Suite 101
                                         Washington, DC 20009
                                         Tel:   (202) 471-1995
                                         Fax:   (202) 280-1128
                                         dkotchen@kotchen.com
                                         dlow@kotchen.com

                                         ***Co-Lead Counsel for Plaintiffs and
                                         Counsel for Midwest Plaintiffs***