**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MINNESOTA**

| | |
|---|---|
| In re: Wholesale Grocery Products Antitrust Litigation | Civil No. 09-MD-2090 (ADM/TNL) |
| This Document Relates to: *All Actions* | MDL Docket No. 2090 |

## PROPOSED JURY INSTRUCTIONS

Pursuant to the Court's November 22, 2017 Notice of Assignment of Case for Trial, ECF 900, Midwest Plaintiffs and Defendant C&S Wholesale Grocers, Inc. (collectively, the "Parties") hereby respectfully submit the following proposed jury instructions for trial. Although the Parties met and conferred on these instructions in good faith on a number of occasions, the Parties were unable to come to an agreement on certain competing instructions. Accordingly, while the instructions contained herein are submitted jointly,[1] the Parties have each separately attached proposed additions to the Parties' jointly-submitted jury instructions.[2]

The Parties reserve the right to supplement or revise any and all of the proposed instructions. Furthermore, both the Midwest Plaintiffs and C&S submit these instructions

---

[1] For certain jointly-proposed instructions, the Parties have discrete disagreements concerning the inclusion of additional language. The Parties have noted these disagreements in footnotes, and provided cross-references to the proposed competing alternate language.

[2] Midwest Plaintiffs' individually proposed instructions are attached as Attachment A. C&S's individually proposed instructions are attached as Attachment B.

without waiver of, and expressly subject to, the ability to move for judgment as a matter of law. *See* Fed. R. Civ. P. 50.

## <u>CHARGES AFTER TRIAL</u>

### JURY INSTRUCTION NO. _____
### [Preliminary Instruction at Close of Trial]

Members of the jury, the instructions I gave at the beginning of the trial and during the trial remain in effect. I now give you some additional instructions.

You must, of course, continue to follow the instructions I gave you earlier, as well as those I give you now. This is true even though some of those I gave you at the beginning of trial are not repeated here.

The instructions I am about to give you now are in writing and will be available to you in the jury room. I emphasize, however, that this does not mean they are more important than my earlier instructions. Again, all instructions, whenever given and whether in writing or not, must be followed.

*Authority: 8th CIR. CIVIL JURY INSTR. § 3.01 (2017); U.S. Securities and Exchange Commission v. Marlon Quan, et al., Case 0:11-cv-00723-ADM-JSM (D. Minn., Feb. 11, 2014).*

**JURY INSTRUCTION NO. _____**
**[Preliminary Instruction at Close of Trial]**

Now that you have heard the evidence and the argument, it becomes my duty to give you the instructions of the Court as to the law applicable to this case.

It is your duty as jurors to follow the law as I shall state it to you, and to apply that law to the facts as you find them from the evidence in the case. You are not to single out one instruction alone as stating the law, but must consider the instructions as a whole. Neither are you to be concerned with the wisdom of any rule of law stated by me.

Counsel have quite properly referred to some of the governing rules of law in their arguments. If, however, any difference appears to you between the law as stated by counsel and that stated by the Court in these instructions, you are of course to be governed by the Court's instructions.

Nothing I say in these instructions is to be taken as an indication that I have any opinion about the facts of the case, or what that opinion is. It is not my function to determine the facts, but rather yours.

You must perform your duties as jurors without bias or prejudice as to any party. The law does not permit you to be governed by sympathy, prejudice or public opinion. All parties expect that you will carefully and impartially consider all of the evidence, follow the law as it is now being given to you, and reach a just verdict, regardless of the consequences.

***Authority: U.S. Securities and Exchange Commission v. Marlon Quan, et al., Case 0:11-cv-00723-ADM-JSM (D. Minn., Feb. 11, 2014)***

4

## JURY INSTRUCTION NO. _____
### [Note-Taking]

You have been allowed to take notes during the course of the trial, and you may take these notes with you to the jury room. You should not consider these notes binding or conclusive, whether they are your notes or those of another juror. The notes should be used as an aid to your memory and not as a substitute for it. You should not give greater weight to a particular bit of evidence solely because it has been reduced to writing. I want to make clear to you that it is your recollection of the evidence which should control, and you should disregard anything contrary to your own recollection which may appear from your own notes or those of another juror.


**Authority: U.S. Securities and Exchange Commission v. Marlon Quan, et al., Case 0:11-cv-00723-ADM-JSM (D. Minn., Feb. 11, 2014)**

## JURY INSTRUCTION NO. _____
### [Direct and Circumstantial Evidence]

There are, generally speaking, two types of evidence from which a jury may properly find the truth as to the facts of a case. One is direct evidence – such as the testimony of any eyewitness. The other is indirect or circumstantial evidence – the proof of a chain of circumstances pointing to the existence or non-existence of certain facts.

As a general rule, the law makes no distinction between direct or circumstantial evidence, but simply requires that the jury find the facts in accordance with the greater weight of all the evidence in the case, both direct and circumstantial.

*Authority: U.S. Securities and Exchange Commission v. Marlon Quan, et al., Case 0:11-cv-00723-ADM-JSM (D. Minn., Feb. 11, 2014)*

**JURY INSTRUCTION NO. _____**
**[Evidence:  Limitations]**

"Evidence" includes the testimony of witnesses; documents and other things received as exhibits; any facts that have been stipulated – that is, formally agreed to by the parties. Certain things are not evidence:

1.      Statements, arguments, questions and comments by lawyers are not evidence.

2.      Exhibits that were identified by a party but were not offered or received in evidence are not evidence.

3.      Objections are not evidence. Lawyers have a right and sometimes an obligation to object when they believe something is improper. If I sustained an objection to a question or an exhibit, you must ignore the question or the exhibit and must not try to guess what the information might have been.

4.      Testimony and exhibits that I struck from the record, or told you to disregard, are not evidence and must not be considered.

5.      Anything you saw or heard about this case outside the courtroom is not evidence.

*Authority: 8th CIR. CIVIL JURY INSTR. § 1.04 (2017); U.S. Securities and Exchange Commission v. Marlon Quan, et al., Case 0:11-cv-00723-ADM-JSM (D. Minn., Feb. 11, 2014)*

**JURY INSTRUCTION NO. _____**
**[Burden of Proof]**

The burden is on the Plaintiffs to prove every essential element of their claim by the greater weight of the evidence, which is also referred to as the "preponderance of the evidence." If the Plaintiffs do not meet this burden on any essential element of their claim, you may not find for the Plaintiffs on that claim. You will have to decide whether Plaintiffs proved certain facts by the preponderance of the evidence. A fact has been proved by the preponderance of the evidence if you find that it is more likely true than not true. You decide that by considering all of the evidence and deciding what evidence is more believable.

You have probably heard the phrase "proof beyond a reasonable doubt." That is a stricter standard than "more likely true than not true." It applies in criminal cases, but not in this civil case; so put it out of your mind.

In determining whether any fact in issue has been proved by the greater weight of the evidence in the case, the jury may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

*Authority: 8th CIR. CIVIL JURY INSTR. § 3.04 (2017); U.S. Securities and Exchange Commission v. Marlon Quan, et al., Case 0:11-cv-00723-ADM-JSM (D. Minn., Feb. 11, 2014)*

### JURY INSTRUCTION NO. _____
### [Inferences]

You are to consider only the evidence in the case.  But in your consideration of the evidence you are not limited to the bald statements of the witnesses.  In other words, you are not limited to what you see and hear as the witnesses testify.  You are permitted to draw, from the facts which you find have been proved, such reasonable inferences as seem justified in light of your experience.

"Inferences" are deductions or conclusions which reason and common sense lead you to draw from facts that have been established by the evidence in the case.

You will make your decision based on what you recall of the evidence.  You will not have a written transcript to consult.

***Authority: U.S. Securities and Exchange Commission v. Marlon Quan, et al., Case 0:11-cv-00723-ADM-JSM (D. Minn., Feb. 11, 2014)***

**JURY INSTRUCTION NO. \_\_\_\_**
**[Credibility of Witnesses]**

In deciding what the facts are, you may have to decide what testimony you believe and what testimony you do not believe.  You may believe all of what a witness said, or only part of it, or none of it.

In deciding what testimony to believe, you may consider the witness's intelligence, the opportunity the witness had to have seen or heard the things testified about, the witness' memory, any motives that witness may have for testifying a certain way, the manner of the witness while testifying, whether that witness said something different at an earlier time, the general reasonableness of the testimony, and the extent to which the testimony is consistent with any evidence that you believe.

In deciding whether or not to believe a witness, keep in mind that people sometimes hear or see things differently and sometimes forget things. You need to consider therefore whether a contradiction is an innocent misrecollection or lapse of memory or an intentional falsehood, and that may depend on whether it has to do with an important fact or only a small detail.

*Authority: 8th CIR. CIVIL JURY INSTR. § 3.03 (2017); Windsor Craft Sales, LLC, et al. v. VICEM Yat Sanayi ve Ticaret AS, et al., Case 0:10-cv-00297-ADM-JJG (D. Minn. May 17, 2012)*

## JURY INSTRUCTION NO. _____
### [Expert Testimony]

The rules of evidence ordinarily do not permit witnesses to testify as to opinions or conclusions.  An exception to this rule exists as to those whom we call "expert witnesses." Witnesses who, by education and experience, have become expert in some art, science, profession, or calling, may state their opinions as to relevant and material matters in which they profess to be expert, and may also state their reasons for the opinion.

Expert opinion testimony should receive whatever weight and credit, if any, you think appropriate, given all the other evidence in the case.  In weighing the expert witness' testimony, you may consider his qualifications, the reasons he gave for his opinions, the reliability of the information supporting those opinions, and the compensation he received in connection with this case.  To the extent you find the expert witness' opinion testimony credible, you may rely on it.  To the extent you do not, you need not rely on his testimony.

*Authority: U.S. Securities and Exchange Commission v. Marlon Quan, et al., Case 0:11-cv-00723-ADM-JSM (D. Minn., Feb. 11, 2014)*

## JURY INSTRUCTION NO. _____
### [Impeachment]

A witness may be discredited or impeached by contradictory evidence; or by evidence that at some other time the witness has said or done something, or has failed to say or do something, which is inconsistent with the witness's present testimony.

If you believe any witness has been impeached and thus discredited, it is your exclusive province to give the testimony of that witness such credibility, if any, as you may think it deserves.

If a witness is shown knowingly to have testified falsely concerning any material matter, you have a right to distrust such witness's testimony in other particulars; and you may reject all the testimony of that witness or give it such credibility as you may think it deserves.

An act or omission is "knowingly" done, if voluntarily and intentionally, and not because of mistake or accident or other innocent reason.

*Authority: U.S. Securities and Exchange Commission v. Marlon Quan, et al., Case 0:11-cv-00723-ADM-JSM (D. Minn., Feb. 11, 2014)*

**JURY INSTRUCTION NO. _____**
**[No Obligation to Call All Witnesses or Introduce All Exhibits]**

The law does not require any party to call as witnesses all persons who may have been present at any time or place involved in the case, or who may appear to have some knowledge of the matters at issue in this trial. Nor does the law require any party to produce as exhibits all papers and things mentioned in the evidence in the case.

*Authority: U.S. Securities and Exchange Commission v. Marlon Quan, et al., Case 0:11-cv-00723-ADM-JSM (D. Minn., Feb. 11, 2014)*

**JURY INSTRUCTION NO. _____**
**[Number of Witnesses]**

The weight of the evidence is not necessarily determined by the number of witnesses testifying to the existence or non-existence of any fact. You may find the testimony of a small number of witnesses as to any fact is more credible than the testimony of a larger number of witnesses to the contrary.

You are not bound to decide any issue of fact in accordance with the testimony of any number of witnesses which does not produce in your minds belief in the likelihood of truth, as against the testimony of a lesser number of witnesses or other evidence which does produce such belief in your minds.

The test is not which side brings the greater number of witnesses or presents the greater quantity of evidence; but which witness, and which evidence, appeals to your minds as being most accurate and otherwise trustworthy.

The testimony of a single witness which produces in your minds belief in the likelihood of truth is sufficient for the proof of any fact, and would justify a verdict in accordance with such testimony even though a number of witnesses may have testified to the contrary, if, after consideration of all the evidence in the case, you hold greater belief in the accuracy and reliability of the one witness.

*Authority: U.S. Securities and Exchange Commission v. Marlon Quan, et al., Case 0:11-cv-00723-ADM-JSM (D. Minn., Feb. 11, 2014)*

### JURY INSTRUCTION NO. _____
### [Redacted Exhibits]

Some exhibits received into evidence during the trial may contain portions that have been redacted. This means that portions have been blocked out and cannot be viewed. You are not to speculate as to what has been redacted or why.

*Authority: U.S. Securities and Exchange Commission v. Marlon Quan, et al., Case 0:11-cv-00723-ADM-JSM (D. Minn., Feb. 11, 2014)*

## JURY INSTRUCTION NO. ____
### [Demonstrative Exhibits/Rule 1006 Summaries]

Certain demonstrative exhibits have been shown to you in Power Point presentations or other forms during the trial to help explain the facts in the case. Those demonstrative exhibits are used for convenience. They are not themselves evidence or proof of any facts. If they do not correctly reflect the facts shown by the evidence in the case, you should disregard these demonstrative exhibits and determine the facts from the underlying evidence.

However, certain schedules, summaries, or charts have been admitted in evidence. You may use those schedules, summaries, or charts as evidence, even though the underlying documents and records are not here. However, if the accuracy or authenticity of those schedules, summaries, or charts has been challenged, it is for you to decide how much weight, if any, you will give to them. In making that decision, you should consider all of the testimony you hear about the way in which they were prepared.

*Authority: 8th CIR. CIVIL JURY INSTR. §§ 2.11, 2.12 (2017); U.S. Securities and Exchange Commission v. Marlon Quan, et al., Case 0:11-cv-00723-ADM-JSM (D. Minn., Feb. 11, 2014)*

## JURY INSTRUCTION NO. _____
## [Deposition Testimony]

During the trial of this case, certain testimony has been presented to you by way of deposition, consisting of sworn recorded answers to questions asked of the witness in advance of the trial by one or more of the attorneys for the parties to the case. The testimony of a witness who, for some reason, cannot be present to testify from the witness stand may be presented in writing under oath or on a video recording played on a computer. Such testimony is entitled to the same consideration, and is to be judged as to credibility, and weighted, and otherwise considered by the jury, in so far as possible, in the same way as if the witness had been present, and had testified from the witness stand.

*Authority: 8th CIR. CIVIL JURY INSTR. § 2.14 (2017); Windsor Craft Sales, LLC, et al. v. VICEM Yat Sanayi ve Ticaret AS, et al., Case 0:10-cv-00297-ADM-JJG (D. Minn. May 17, 2012)*

### JURY INSTRUCTION NO. _____
### [Sherman Act—Purpose]

The purpose of the Sherman Act is to preserve free and unfettered competition in the marketplace. The Sherman Act rests on the central premise that competition produces the best allocation of our economic resources, the lowest prices, the highest quality, and the greatest material progress.

*Authority: ABA Model Jury Instructions in Civil Antitrust Cases (2016 ed.), Ch. 1, A.1.*

**JURY INSTRUCTION NO. \_\_\_\_**
**[Conspiracy—Overview]**

A conspiracy is an agreement or understanding between two or more persons to restrain trade.[3] Plaintiffs must prove both of the following elements by a preponderance of the evidence:

(1)    that the alleged conspiracy existed; and

(2)    that C&S knowingly became a member of that conspiracy.  To act knowingly means to participate deliberately, and not because of mistake or accident or other innocent reason.

The basis of a conspiracy is an agreement or understanding between two or more persons.  An agreement or understanding between two or more persons exists when they share a commitment to a common scheme.  To establish the existence of a conspiracy, the evidence need not show that its members entered into any formal or written agreement.  The agreement itself may have been entirely unspoken.  A person can become a member without full knowledge of all of the details of the conspiracy, the identity of all of its members, or the parts such members played in the charged conspiracy.  The members of the conspiracy need not necessarily have met together, directly stated what their object or purpose was to one another, or stated the details or the means by which they would accomplish their purpose.  To prove a conspiracy existed, the evidence must show that the alleged members of the conspiracy came to an agreement or understanding among themselves to accomplish a common purpose.

---

[3] Midwest Plaintiffs request that the Court include the bolded Model Instruction language on page 34 when instructing the jury. C&S submits that its proposed Overview of Plaintiffs' Sherman Act Claim instruction sufficiently covers this point and that the inclusion of this language would, therefore, be repetitive.

A conspiracy may be formed without all parties coming to an agreement at the same time. Similarly, it is not essential that all persons acted exactly alike, nor is it necessary that they all possessed the same motive for entering the agreement.  It is also not necessary that all of the means or methods claimed by Plaintiffs were agreed upon to carry out the alleged conspiracy, nor that all of the means or methods that were agreed upon were actually used or put into operation, nor that all the persons alleged to be members of the conspiracy were actually members.  It is the agreement or understanding to restrain trade by dividing territory and customers along geographic lines that constitutes a conspiracy.  Therefore, you may find a conspiracy existed regardless of whether it succeeded or failed.

Plaintiffs may prove the existence of the alleged conspiracy through direct evidence, circumstantial evidence, or both.  Direct evidence is explicit and requires no inferences to establish the existence of the alleged conspiracy. Direct evidence of an agreement may not be available, and therefore a conspiracy also may be shown through circumstantial evidence.   You may infer the existence of a conspiracy from the circumstances, including what you find the alleged members actually did and the words they used.  Mere similarity of conduct among various persons, however, or the fact that they may have associated with one another and may have met or assembled together, does not by itself establish the existence of a conspiracy.  If they acted similarly but independently of one another, without any agreement among them, then there would not be a conspiracy.

In determining whether an agreement or understanding between two or more persons has been proved, you must view the evidence as a whole and not piecemeal.


*Authority: ABA Model Jury Instructions in Civil Antitrust Cases (2016 ed.), Ch. 2, A.1.*

**JURY INSTRUCTION NO. \_\_\_\_**
**[Conspiracy—Corporations]**

Under the law, a corporation is a person, but it acts only through its agents.  A corporation's agents include its directors, officers, employees, or others acting on its behalf. A corporation is not capable under the law of conspiring with its own agents, unincorporated divisions, or wholly owned subsidiaries.  Through its agents, however, a corporation is capable of conspiring with other persons or independent corporations.

A corporation is legally bound by the acts and statements of its agents or employees done or made within the scope of the agent's employment or apparent authority.

Acts done within the scope of employment are acts performed on behalf of a corporation and directly related to the performance of the duties that agent has general authority to perform.  Apparent authority is the authority that persons outside the corporation could reasonably believe the agent would have, judging from his or her position within the company, the responsibilities previously entrusted to the person or the office, and the circumstances surrounding his or her past conduct.  An agent can have apparent authority even when, despite these appearances, the agent is actually acting in a dishonest, fraudulent, or anticompetitive manner. To summarize, for a corporation to be legally responsible for the acts or statements of its agents, you must find that the agent was acting within the scope of his or her employment with apparent authority.

The fact that a corporation has instructed its agents not to violate the antitrust laws does not excuse the corporation from responsibility for the unlawful acts of its agents done within the scope of their employment or apparent authority.

A corporation is entitled to the same fair trial as a private individual.  The acts of a corporation are to be judged by the same standard as the acts of a private individual, and you may hold a corporation liable only if such liability is established by the preponderance of the evidence.  All persons, including corporations, are equal before the law.

*Authority: ABA Model Jury Instructions in Civil Antitrust Cases (2016 ed.), Ch. 2, A.3.*

## JURY INSTRUCTION NO. ___
### [Injury and Causation]

If you find that C&S has violated the Sherman Act, then you must decide if Plaintiffs are entitled to recover damages from C&S.

Plaintiffs are entitled to recover damages for an injury to their business or property if they can establish three elements of injury and causation:[4]

1.  Plaintiffs were in fact injured as a result of C&S's alleged violation of the antitrust laws;

2.  C&S's alleged illegal conduct was a material cause of Plaintiffs' injury; and

3.  Plaintiffs' injury is an injury of the type that the antitrust laws were intended to prevent.

The first element is sometimes referred to as "injury in fact" or "fact of damage." For Plaintiffs to establish that they are entitled to recover damages, they must prove that they were injured as a result of C&S's alleged violation of the antitrust laws. Proving the fact of damage does not require Plaintiffs to prove the dollar value of their injury. It requires only that Plaintiffs prove that they were in fact injured by C&S's alleged antitrust violation. If you find that Plaintiffs have established that they were in fact injured, you may then consider the amount of Plaintiffs' damages. It is important to understand, however, that injury and amount of damage are different concepts and that you cannot consider the amount of damage unless and until you have concluded that Plaintiffs have established that they were in fact injured.

---

[4] C&S requests that the Court include the bolded language on pages 56–57 when instructing the jury. Midwest Plaintiffs submit that the Model Instruction language should be used and that this instruction should be read as is.

Plaintiffs must also offer evidence that establishes by a preponderance of the evidence that C&S's alleged illegal conduct was a material cause of Plaintiffs' injury. This means that Plaintiffs must have proved that some damage occurred to them as a result of C&S's alleged antitrust violation, and not some other cause. Plaintiffs are not required to prove that C&S's alleged antitrust violation was the sole cause of their alleged injury; nor need Plaintiffs eliminate all other possible causes of injury. It is enough if Plaintiffs have proved that the alleged antitrust violation was a material cause of their alleged injury in the form of Supervalu overcharges.

Finally, Plaintiffs must establish that their alleged injury is the type of injury that the antitrust laws were intended to prevent. This is sometimes referred to as "antitrust injury." If Plaintiffs' injuries were caused by a reduction in competition, acts that would lead to a reduction in competition, or acts that would otherwise harm grocers, then Plaintiffs' injuries are antitrust injuries. On the other hand, if Plaintiffs' injuries were caused by heightened competition, the competitive process itself, or by acts that would benefit grocers, then Plaintiffs' alleged injuries are not antitrust injuries and Plaintiffs may not recover damages for those injuries under the antitrust laws.

In summary, if Plaintiffs can establish that they were in fact injured by C&S's conduct, that C&S's conduct was a material cause of Plaintiffs' alleged injury, and that Plaintiffs' alleged injury was the type that the antitrust laws were intended to prevent, then Plaintiffs are entitled to recover damages for the injury to their business or property.

*Authority: ABA Model Jury Instructions in Civil Antitrust Cases (2016 ed.), Ch. 6, A.1.*

**JURY INSTRUCTION NO. \_\_\_**
**[Antitrust Damages—Introduction and Purpose]**

If you find that C&S violated the antitrust laws and that this violation caused injury to Plaintiffs, then you must determine the amount of damages, if any, Plaintiffs are entitled to recover. The fact that I am giving you instructions concerning the issue of Plaintiffs' damages does not mean that I believe Plaintiffs should, or should not, prevail in this case. If you reach a verdict for C&S on the issue of liability,[5] you should not consider the issue of damages, and you may disregard the damages instruction that I am about to give.

The law provides that Plaintiffs should be fairly compensated for all damages to their business or property that were a direct result or likely consequence of the conduct that you have found to be unlawful.

Antitrust damages are only compensatory, meaning their purpose is to put an injured plaintiff as near as possible in the position in which it would have been had the alleged antitrust violation not occurred. The law does not permit you to award damages to punish a wrongdoer—what we sometimes refer to as punitive damages—or to deter particular conduct in the future. Furthermore, you are not permitted to award to Plaintiffs an amount for attorneys' fees or the costs of maintaining this lawsuit.

***ABA Model Jury Instructions in Civil Antitrust Cases (2016 ed.), Ch. 6, B.1.***

---

[5] As noted on page 41, Midwest Plaintiffs request that this clause be rephrased to read: "If you reach a verdict for C&S on Plaintiffs' claim that C&S agreed with Supervalu to divide customers and territories along geographic lines, . . . . ." C&S submits that the Model Instruction language should be used and that the instruction should be read as is.

**JURY INSTRUCTION NO. \_\_\_**
**[Basis for Calculating Damages]**

You are permitted to make just and reasonable estimates in calculating Plaintiffs' damages. You are not required to calculate damages with mathematical certainty or precision. However, the amount of damages must have a reasonable basis in the evidence and must be based on reasonable, non-speculative assumptions and estimates. Damages may not be based on guesswork or speculation. Plaintiffs must prove the reasonableness of each of the assumptions upon which the damages calculation is based.

If you find that Plaintiffs have provided a reasonable basis for determining damages, then you may award damages based on a just and reasonable estimate supported by the evidence.

If you find that Plaintiffs have failed to carry their burden of providing a reasonable basis for determining damages, then you may not award damages.

*Authority: ABA Model Jury Instructions in Civil Antitrust Cases (2016 ed.), Ch. 6, B.3.*

## JURY INSTRUCTION NO. 27
### [Class Damages]

Plaintiffs are seeking to recover overcharge damages on behalf of five classes of purchasers: grocers who purchased from the Champaign Distribution Center Non Arbitration Class,[6] grocers who purchased from the Champaign Distribution Center Arbitration Class,[7] grocers who purchased from the Green Bay Distribution Center Class,[8] grocers who purchased from the Hopkins Distribution Center Class,[9] and grocers who purchased from the Pleasant Prairie Distribution Center Class.[10]

---

[6] All customers that paid ABS fees on wholesale grocery products in all four SuperValu ABS product categories (grocery, dairy, frozen, and general merchandise/health and beauty care) purchased directly from SuperValu's Champaign, Illinois DC from December 31, 2004 through September 13, 2008 (the "Class Period"), are located in the relevant geographic market, and did not have an arbitration agreement with SuperValu during the Class Period. [ECF No. 150 at 31.]

[7] All customers that paid ABS fees on wholesale grocery products in all four SuperValu ABS product categories (grocery, dairy, frozen, and general merchandise/health and beauty care) purchased directly from SuperValu's Champaign, Illinois DC from December 31, 2004 through September 13, 2008, are located in the relevant geographic market, and had an arbitration agreement with SuperValu during the Class Period. [*Id.* at 31-32.]

[8] All customers that paid ABS fees on wholesale grocery products in all four SuperValu ABS product categories (grocery, dairy, frozen, and general merchandise/health and beauty care) purchased directly from SuperValu's Green Bay, Wisconsin DC from December 31, 2004 through September 13, 2008, and are located in the relevant geographic market. [*Id.* at 32.]

[9] All customers that paid ABS fees on wholesale grocery products in all four SuperValu ABS product categories (grocery, dairy, frozen, and general merchandise/health and beauty care) purchased directly from SuperValu's Hopkins, Minnesota DC from December 31, 2004 through September 13, 2008, and are located in the relevant geographic market. [*Id.*]

[10] All customers that paid ABS fees on wholesale grocery products in all four SuperValu ABS product categories (grocery, dairy, frozen, and general merchandise/health and beauty care) purchased directly from SuperValu's Pleasant Prairie, Wisconsin DC from December 31, 2004 through September 13, 2008, and are located in the relevant geographic market. [*Id.*]

To award damages for the classes, you do not need to determine the overcharge paid by each class member with absolute mathematical certainty or precision.   It is sufficient for you to determine the average overcharge paid by class members or estimate the overcharge paid by class members, as long as the average or estimate is based on evidence and reasonable inferences. You may not base your damages award on guesswork or speculation.[11]

*Authority: ABA Model Jury Instructions in Civil Antitrust Cases (2016 ed.), Ch. 6, B.7; Sep. 9, 2016 Am. Redacted Mem. Op. & Order at 31-32 (ECF No. 651).*

---

[11] C&S requests that the Court include the bolded Model Instruction language on page 62 when instructing the jury. Midwest Plaintiffs submit that this instruction should be read as is.

**JURY INSTRUCTION NO. ___**
**[Selection of Foreperson; Special Verdict]**

Upon retiring to the jury room, you will select one of your number to act as your foreperson. The foreperson will preside over your deliberations and will be your spokesperson here in Court. A form of special verdict has been prepared for your convenience. You will take this form to the jury room.

**(FORM OF SPECIAL VERDICT READ)**

The answer to each question must be the unanimous answer of the jury. Your foreperson will write the unanimous answer of the jury in the space provided opposite each question.

Your verdict must be based solely on the evidence and on the law which I have given to you in my instructions. Nothing I have said or done is intended to suggest what your verdict should be – that is entirely for you to decide.[12]

After the jury has answered each of the questions asked, the foreperson will date and sign the special verdict as so completed, and the jury will then return with it to the courtroom.

*Authority: 8th CIR. CIVIL JURY INSTR. §§ 1.03, 3.06 (2017); U.S. Securities and Exchange Commission v. Marlon Quan, et al., Case 0:11-cv-00723-ADM-JSM (D. Minn., Feb. 11, 2014)*

---

[12] C&S requests that the Court include the bolded language on page 63 when instructing the jury. Midwest Plaintiffs submit that this instruction should be read as is.

# JURY INSTRUCTION NO. ___
## [Deliberations]

If it becomes necessary during your deliberations to communicate with the Court, you may send a note by a court security officer, signed by your foreperson or by one or more members of the jury.  No member of the jury should ever attempt to communicate with the Court by any means other than a signed writing, and the Court will never communicate with any member of the jury on any subject touching the merits of the case otherwise than in writing, or orally here in open Court.

You will note from the oath about to be taken by the court security officers that they too, as well as all other persons, are forbidden to communicate in any way or manner with any member of the jury on any subject touching the merits of the case.

Bear in mind also that you are never to reveal to any person – not even to the Court – how the jury stands, numerically or otherwise, on the questions before you, until after you have reached a unanimous verdict.

**Authority: 8th CIR. CIVIL JURY INSTR. § 3.06 (2017); U.S. Securities and Exchange Commission v. Marlon Quan, et al., Case 0:11-cv-00723-ADM-JSM (D. Minn., Feb. 11, 2014)**

## **ATTACHMENT A**

**Midwest Plaintiffs' Proposed Additions to the Parties' Jointly-Submitted Jury Instructions**

# JURY INSTRUCTION NO. ___
## [Per Se Violations]

### (TO BE INSERTED IMMEDIATELY AFTER THE PURPOSE OF THE SHERMAN ACT INSTRUCTION)

The Sherman Act makes unlawful certain agreements which, because of their harmful effect on competition and lack of any redeeming virtue, are conclusively presumed to be unreasonable restraints on trade without inquiry about the precise harm they have caused or the business excuse for their use.   Included in this category of unlawful agreements are those agreements the terms of which fix prices, allocate customers, or rig bids; in connection with such an agreement, you need not be concerned with whether the agreement was reasonable or unreasonable, or the justifications for the agreement, or the harm done by it, and it is not a defense that the parties thereto may have acted with good motives, or may have thought that what they were doing was legal, or that the conspiracy may have had some good results.

**Authority: *United States v. Misle Bus & Equip. Co.*, 967 F.2d 1227, 1235 n.4 (8th Cir. 1992).**

**JURY INSTRUCTION NO. _____**
**[Conspiracy—Overview]**

(MIDWEST PLAINTIFFS REQUEST THAT THE COURT ADD THE BOLDED
LANGUAGE BELOW TO THE CONSPIRACY-OVERVIEW INSTRUCTION)

**Plaintiffs allege that C&S participated in a conspiracy to restrain trade by dividing customers and territories along geographic lines.** A conspiracy is an agreement or understanding between two or more persons to restrain trade. Plaintiffs must prove both of the following elements by a preponderance of the evidence:

(1)     that the alleged conspiracy existed; and

(2)     that C&S knowingly became a member of that conspiracy.  To act knowingly means to participate deliberately, and not because of mistake or accident or other innocent reason.

The basis of a conspiracy is an agreement or understanding between two or more persons.  An agreement or understanding between two or more persons exists when they share a commitment to a common scheme.  To establish the existence of a conspiracy, the evidence need not show that its members entered into any formal or written agreement. The agreement itself may have been entirely unspoken.  A person can become a member without full knowledge of all of the details of the conspiracy, the identity of all of its members, or the parts such members played in the charged conspiracy.  The members of the conspiracy need not necessarily have met together, directly stated what their object or purpose was to one another, or stated the details or the means by which they would accomplish their purpose.  To prove a conspiracy existed, the evidence must show that the alleged members of the conspiracy came to an agreement or understanding among themselves to accomplish a common purpose.

A conspiracy may be formed without all parties coming to an agreement at the same time. Similarly, it is not essential that all persons acted exactly alike, nor is it necessary that they all possessed the same motive for entering the agreement.  It is also not necessary that all of the means or methods claimed by Plaintiffs were agreed upon to carry out the alleged conspiracy, nor that all of the means or methods that were agreed upon were actually used or put into operation, nor that all the persons alleged to be members of the conspiracy were actually members.  It is the agreement or understanding to restrain trade by dividing territory and customers along geographic lines that constitutes a conspiracy.  Therefore, you may find a conspiracy existed regardless of whether it succeeded or failed.

Plaintiffs may prove the existence of the alleged conspiracy through direct evidence, circumstantial evidence, or both.  Direct evidence is explicit and requires no inferences to establish the existence of the alleged conspiracy. Direct evidence of an agreement may not be available, and therefore a conspiracy also may be shown through circumstantial evidence.  You may infer the existence of a conspiracy from the circumstances, including what you find the alleged members actually did and the words they used.  Mere similarity of conduct among various persons, however, or the fact that they may have associated with one another and may have met or assembled together, does not by itself establish the existence of a conspiracy.  If they acted similarly but independently of one another, without any agreement among them, then there would not be a conspiracy.

In determining whether an agreement or understanding between two or more persons has been proved, you must view the evidence as a whole and not piecemeal.

***Authority: ABA Model Jury Instructions in Civil Antitrust Cases (2016 ed.), Ch. 2, A.1.***

**JURY INSTRUCTION NO. ___**
**[Claim 1—Allocation of Customers]**

(TO BE INSERTED IMMEDIATELY AFTER THE FINAL CONSPIRACY
INSTRUCTION)

Plaintiffs claim that C&S has violated the Sherman Act by agreeing with Supervalu to allocate customers for whom C&S and Supervalu would otherwise have competed. Allocate means to divide up.

A business has the right to select the geographic area or territory in which it will sell its products or services and the terms and conditions on which it will do business with others. Likewise, a business has no legal obligation to sell to a particular customer. A business may decide not to solicit or sell to a customer, provided the decision is an independent judgment. A business may not, however, agree with a competitor to allocate customers.

A conspiracy to allocate customers is an agreement between two or more competitors not to compete with one another for the business of particular customers. Customer allocation exists, for example, where two or more competitors agree that they will not sell or try to sell to one another's existing customers or to certain customers along geographic lines.

To prevail on this claim against C&S, Plaintiffs must prove each of the following elements by a preponderance of the evidence:

(1) C&S agreed with Supervalu to divide up customers along geographic lines;

(2) the agreement occurred in or affected interstate commerce; and

(3) Plaintiffs were injured in their business or property because of the agreement.

If you find that the evidence is insufficient to prove any of these elements as to C&S, then you must find for C&S and against Plaintiffs on this claim.  If you find that the evidence is sufficient to prove this element as to C&S, then you must find for Plaintiffs and against C&S on this claim.

**Authority: ABA Model Jury Instructions in Civil Antitrust Cases (2016 ed.), Ch. 2, C.1.**

**JURY INSTRUCTION NO. ___**
**[Claim 2—Allocation of Territories or Geographic Areas]**

(TO BE INSERTED IMMEDIATELY AFTER THE CLAIM 1 INSTRUCTION)

Plaintiffs claim that C&S and SuperValu are competitors or potential competitors and that C&S violated the Sherman Act by agreeing with SuperValu to allocate between themselves territories or geographic areas in the sale of full line grocery wholesale products and services.  Allocate means to limit, divide up, or not to compete.

A business has the right to select its own geographic area or territory in which it will sell its products or services.  Likewise, a business may decide not to sell its products or services in a particular area or territory, provided that the decision results from the exercise of an independent business judgment and not from any agreement with a competitor or potential competitor.  The Sherman Act, however, prohibits agreements between competitors or potential competitors to allocate the territories or geographic areas in which they will market or sell their respective products or services.

A conspiracy to allocate territories or geographic areas is an agreement between two or more competitors not to compete in territories or areas in which they would have otherwise competed.  By way of example, this includes an agreement by two competitors not to compete with each other in particular geographic areas; to confine their sales efforts to particular or different territories; to require one to

discontinue sales in an area where the other will continue to sell; or to not submit competitive bids in certain territories.

To prevail on this claim against C&S, Plaintiffs must prove each of the following elements by a preponderance of the evidence:

(1)   C&S and SuperValu were competitors or potential competitors;

(2)   C&S and SuperValu entered into an agreement;

(3)   C&S agreed that it would not compete with Supervalu in certain territories or geographic areas;

(4)   the agreement occurred in or affected interstate commerce; and

(5)   Plaintiffs were injured in their business or property because of the agreement.

If you find that the evidence is insufficient to prove any of these elements as to C&S, then you must find for C&S and against Plaintiffs on this claim.  If you find that the evidence is sufficient to prove each element as to C&S, then you must find for Plaintiffs and against C&S on this claim.

**Authority: ABA Model Jury Instructions in Civil Antitrust Cases (2016 ed.), Ch. 2, C.2.**

**JURY INSTRUCTION NO. ___**
**[Interstate Commerce]**


(TO BE INSERTED AFTER ALLOCATION OF TERRITORIES INSTRUCTION)


The Sherman Act applies only to restraints that affect interstate or foreign commerce. In this case, Plaintiffs contend that the alleged restraint affects interstate commerce. Interstate commerce refers to transactions in goods or services between one or more persons in one state and one or more persons in another state.

To affect interstate commerce, it is not necessary that the restraint itself occurs in multiple states or directly affects transactions that span across multiple states. It is enough if some activities of C&S that were affected by the restraint had some effect on interstate commerce.


*Authority: ABA Model Jury Instructions in Civil Antitrust Cases (2016 ed.), Ch. 1, D.*

## JURY INSTRUCTION NO. ___
### [Antitrust Damages—Introduction and Purpose]

(MIDWEST PLAINTIFFS REQUEST THAT THE COURT MODIFY THE
ANTITRUST DAMAGES—INTRODUCTION & PURPOSE INSTRUCTION AS
NOTED IN BOLD BELOW)

If you find that C&S violated the antitrust laws and that this violation caused injury to Plaintiffs, then you must determine the amount of damages, if any, Plaintiffs are entitled to recover. The fact that I am giving you instructions concerning the issue of Plaintiffs' damages does not mean that I believe Plaintiffs should, or should not, prevail in this case. If you reach a verdict for C&S on Plaintiffs' claim that C&S **on Plaintiffs' claim that C&S agreed with Supervalu to divide customers and territories along geographic lines**, you should not consider the issue of damages, and you may disregard the damages instruction that I am about to give.

The law provides that Plaintiffs should be fairly compensated for all damages to their business or property that were a direct result or likely consequence of the conduct that you have found to be unlawful.

Antitrust damages are only compensatory, meaning their purpose is to put an injured plaintiff as near as possible in the position in which it would have been had the alleged antitrust violation not occurred. The law does not permit you to award damages to punish a wrongdoer— what we sometimes refer to as punitive damages—or to deter particular conduct in the future. Furthermore, you are not permitted to award to Plaintiffs an amount for attorneys' fees or the costs of maintaining this lawsuit.

***ABA Model Jury Instructions in Civil Antitrust Cases (2016 ed.), Ch. 6, B.1.***

**JURY INSTRUCTION NO. \_\_\_**
**[Damages—Joint and Several Liability]**

(TO BE INSERTED IMMEDIATELY AFTER THE BASIS FOR CALCULATING
DAMAGES INSTRUCTION)

Each participant in a conspiracy that violates the antitrust laws is jointly and severally liable for all of the damages resulting from the conspiracy.  This means that each conspirator is fully liable for all of the damages caused by the conspiracy and not solely for damages caused by an individual conspirator.

If you find that Plaintiffs have proven the existence of the alleged conspiracy, that C&S participated in the conspiracy, and that Plaintiffs are entitled to recover damages based on the other instructions in this case, then C&S would be liable for all damages caused by the conspiracy including overcharges by Supervalu.

*Authority: ABA Model Jury Instructions in Civil Antitrust Cases (2016 ed.), Ch. 6, B.17.*

**ATTACHMENT B**

**C&S's Proposed Additions to the Parties' Jointly-Submitted Jury Instructions**

**JURY INSTRUCTION NO. ___**
**[Sherman Act—Section 1—General]**

(TO BE INSERTED IMMEDIATELY AFTER THE SHERMAN ACT PURPOSE
INSTRUCTION)

Plaintiffs challenge C&S's conduct under Section 1 of the Sherman Act.  Section 1

prohibits contracts, combinations, and conspiracies that unreasonably restrain trade.  To

establish a violation of Section 1 of the Sherman Act, Plaintiffs must prove the following

three elements by a preponderance of the evidence:

1.  The existence of a contract, combination, or conspiracy between C&S and
    Supervalu separate and apart from the AEA;

2.  That the contract, combination, or conspiracy unreasonably restrains trade; and

3.  That the restraint caused Plaintiffs to suffer an injury to their businesses or
    property.

If Plaintiffs do not prove all four of these elements by a preponderance of the

evidence, you must rule for C&S.

*Authority: ABA Model Jury Instructions in Civil Antitrust Cases (2016 ed.), Ch. 1, B.*

**JURY INSTRUCTION NO. _____**
**[Overview of Plaintiffs' Sherman Act Claim]**

(TO BE INSERTED AFTER THE SHERMAN ACT—SECTION 1—GENERAL
INSTRUCTION OR THE SHERMAN ACT PURPOSE INSTRUCTION)

This is a lawsuit in which Plaintiffs, a group of Midwest retail grocery stores, allege that Defendant C&S, a wholesale grocery supplier, violated the Sherman Act, a federal antitrust law that governs competition between companies, by agreeing with Supervalu to divide territory and customers along geographic lines.

Specifically, Plaintiffs allege that C&S entered an unwritten agreement with Supervalu whereby C&S agreed not to compete at all for any business in the Midwest and Supervalu agreed not to compete at all for any business in New England for five years, from September 2003 to September 2008. I will refer to this as the alleged "unwritten agreement," and will soon instruct you on how to determine whether the alleged unwritten agreement existed and, if so, whether it was unreasonable.

You have also heard in this case that C&S and Supervalu had noncompete/ nonsolicit provisions set forth in the written Asset Exchange Agreement or the "AEA". Those provisions in the AEA are not being challenged by the Plaintiffs in this case.

C&S denies that it ever conspired with Supervalu to restrain trade. C&S denies that it entered into an unwritten agreement with Supervalu in which it agreed not to compete for any business in the Midwest and Supervalu agreed not to compete for any business in New England.

**JURY INSTRUCTION NO. ___**
**[Conspiracy—Independent Conduct]**

(TO BE INSERTED IMMEDIATELY AFTER THE CONSPIRACY—CORPORATIONS
INSTRUCTION)

Plaintiffs contend that C&S did not compete at all for any business in the Midwest between 2003 and 2008.  Plaintiffs further contend that this conduct, when considered with other evidence, shows that an unwritten agreement existed between C&S and Supervalu to allocate the Midwest and New England markets to each of themselves.  In response, C&S claims that no unwritten agreement existed and that it did compete for business in the Midwest between 2003 and 2008.

However, even if you find that C&S did not compete at all for any business in the Midwest, this does not by itself establish the existence of an unwritten agreement among C&S and Supervalu to divide the Midwest and New England markets among themselves.  C&S's behavior may be no more than the result of the exercise of its independent business judgment.  A business has the right to select the geographic area or territory in which it will sell its products or services and the terms and conditions on which it will do business with others.  Likewise, it is permissible for a business to decide not to sell its products or services in a particular area or territory, provided that the decision results from the exercise of an independent business judgment and not from any agreement with a competitor.

To establish the existence of the alleged unwritten agreement, Plaintiffs must produce evidence that *tends to exclude* the possibility that C&S acted independently in deciding whether and how to compete in the Midwest.  You must decide whether C&S's

decision about whether and how to do business in the Midwest was, more probably than not, the result of an unwritten agreement or understanding—separate and apart from the written AEA—between C&S and Supervalu. In making this determination, you should consider C&S's conduct against the entire background in which it took place. The evidence, when viewed all together, must satisfy you that it is more likely that C&S's actions in the Midwest were the product of an unwritten agreement or understanding with Supervalu rather than a product of C&S's own independent decisions.

*Authority: ABA Model Jury Instructions in Civil Antitrust Cases (2005 ed.), B-7–B-9.; ABA Model Jury Instructions in Civil Antitrust Cases (2016 ed.), Ch. 2, A.1; Matsushita Elec. Indus. Co., v. Zenith Radio Corp., 475 U.S. 574, 588 (1986); United States v. Colgate & Co., 250 U.S. 300 (1919).*

**JURY INSTRUCTION NO. ___**
**[Unreasonable Restraint of Trade/Rule of Reason]**

(TO BE INSERTED IMMEDIATELY AFTER THE FINAL CONSPIRACY
INSTRUCTION)

If you find that the alleged unwritten agreement between C&S and Supervalu to divide markets existed, you must go on to consider whether that agreement unreasonably restrained trade. If you find that Plaintiffs failed to prove the existence of an unwritten agreement, then you should ignore the instructions that I am about to give you.

**A.     Rule of Reason—Overview**

Under Section 1 of the Sherman Act, a restraint of trade is illegal only if it is found to be unreasonable.  You must determine, therefore, whether the restraint challenged here—the alleged unwritten agreement—is unreasonable.  In making this determination, you must first determine whether Plaintiffs have proven that the alleged unwritten agreement resulted in a substantial harm to competition in a relevant product and geographic market.  In order to find such harm, you must find that the challenged conduct had a significant or substantially adverse effect on competition; a minute or de minimis impact is insufficient.[13]  If you find that the Plaintiffs have proven that the alleged unwritten agreement results in a substantial harm to competition in a relevant product and geographic market, then you must consider whether the restraint produces countervailing competitive benefits.  If you find that it does, then you must balance the competitive harm against the competitive benefits.  The alleged unwritten agreement is illegal under

---

[13] *See ABA Model Jury Instructions in Civil Antitrust Cases (2016 ed.), Ch. 1, C.1. n.1.*

Section 1 of the Sherman Act only if you find that Plaintiffs have proven that the competitive harm substantially outweighs the competitive benefit.

I will now review each step of the analysis in more detail.

### B.        Rule of Reason—Proof of Competitive Harm

As I mentioned, to prove that the alleged unwritten agreement is unreasonable, Plaintiffs first must demonstrate that the restraint has resulted in a substantial harm to competition.  Furthermore, Plaintiffs must show that the harm to competition occurred in an identified market, known as a relevant market.  There are two aspects to a relevant market.  The first aspect is known as the relevant product market.  The second aspect is known as the relevant geographic market.  It is Plaintiffs' burden to prove the existence of a relevant market. I will instruct you on relevant market shortly.

If you find that Plaintiffs have proven the existence of a relevant market, then you must determine whether Plaintiffs also have proven that the alleged unwritten agreement had a substantial harmful effect on competition in that market. A minute or de minimis impact is not sufficient.  A harmful effect on competition, or competitive harm, refers to a reduction in competition that results in the loss of some of the benefits of competition, such as lower prices, increased output, or higher product quality.   If the challenged conduct has not resulted in Supervalu charging higher prices, decreasing output, lowering quality, or the loss of some other competitive benefit, then there has been no competitive harm, and you should find that the challenged conduct was not unreasonable.

In determining whether the alleged unwritten agreement has produced competitive harm, you may look at the following factors:

- the effect of the alleged unwritten agreement on Supervalu's prices, output, product quality, and service;

- the purpose and nature of the alleged unwritten agreement;

- the nature and structure of the relevant market;

- the number of competitors in the relevant market and the level of competition among them, both before and after the restraint was imposed; and

- whether Supervalu possessed market power.

The last factor mentioned, market power, has been defined as an ability to profitably raise prices, for a sustained period of time, above those that would be charged in a competitive market. A firm that possesses market power generally can charge higher prices for the same goods or services than a firm in the same market that does not possess market power. The ability to charge higher prices for better products or services, however, is not market power. An important factor in determining whether a company possesses market power is that company's market share, that is, its percentage of the products or services sold in the relevant market by all competitors. In addition, other factors that you may consider in determining whether a company has market power include barriers to entry, meaning the cost and difficulty of a competitor entering that market, and the existence of competitors in the relevant market. If a company does not possess a substantial market share, it is less likely that the company possesses market power. If Supervalu did not possess market power, it is less likely that the alleged unwritten agreement resulted in a substantial harmful effect on competition in the market.

### C.      Relevant Market

As I have said, it is Plaintiffs' burden to prove that any anticompetitive effects from the alleged unwritten agreement occurred in a relevant market. There are two aspects you must consider in determining whether Plaintiffs have established a relevant market: the relevant product market and the relevant geographic market.

### (1)      Relevant Product Market

In this case, the Plaintiffs claim that the relevant product market is full-line grocery wholesaling, which Plaintiffs argue is limited to wholesalers offering all four ABS product categories (grocery, frozen, dairy, and general merchandise) and does not include cooperative wholesalers or wholesalers that do not offer all four ABS categories. By contrast, C&S contends that the Plaintiffs have failed to prove the proper relevant product market because Plaintiffs exclude cooperative wholesalers, partial-line wholesalers, and/or self-warehousing by retailers from their alleged relevant market. You must determine what the relevant product market is based on the evidence.

The basic idea of a relevant product market is that the products within it are reasonable substitutes for each other from the buyer's point of view; that is, the products compete with each other.  In other words, the relevant product market includes the products—in this case, grocery wholesaling—that a grocer believes are reasonably interchangeable or reasonable substitutes for each other.  This is a practical test with reference to the actual behavior of buyers and marketing efforts of sellers.  Products need not be identical or precisely interchangeable as long as they are reasonable substitutes.

To determine whether products are reasonable substitutes for each other, you must consider whether a small but significant and non-transitory increase in the price of one product would result in enough customers—in this case, grocers—switching from that product to another product such that the price increases would not be profitable.  In other words, will customers accept the price increase or will so many switch to alternative products that the price increase will be withdrawn?  Generally speaking, a small but significant and non-transitory increase in price is approximately a 5 percent increase in price not due to cost factors, but you may conclude in this case that some other percentage is more applicable to the products at issue.  If you find that customers would switch and that the price increase would not be profitable, then you must conclude that the products are in the product market.  If, on the other hand, you find that the customers would not switch, then you must conclude that the products are not in the product market.

In evaluating whether various products are reasonably interchangeable or reasonable substitutes for each other under the price increase test I have just given you, you may also consider:

- customers' views on whether the products are interchangeable

- the relationship between the price of one product and sales of another;

- The presence or absence of specialized vendors;

- The perceptions of either industry or the public as to whether the products are in separate markets;

- The views of the Plaintiffs, other class members, Supervalu, and C&S regarding who their respective competitors are; and

- The existence or absence of different customer groups or distribution channels.

If you find that the Plaintiffs have proven a relevant product market, then you should continue to evaluate the remainder of Plaintiffs' claim.  However, if you find that the Plaintiffs have failed to prove such a market, then you must find in C&S's favor on this claim.

### (2)    Relevant Geographic Market

In this case, the relevant geographic market is the area in which Supervalu faces competition from other firms that compete in the relevant product market and to which customers can reasonably turn for purchases.  When analyzing the relevant geographic market, you should consider whether changes in prices or product offerings in one geographic area have substantial effects on prices or sales in another geographic area, which would tend to show that both areas are in the same relevant geographic market. The geographic market may be as large as global or nationwide, or as small as a single town or neighborhood.

Plaintiffs have the burden of proving the relevant geographic market by a preponderance of the evidence.  In this case, Plaintiffs claim that the relevant geographic market consists of the entire states of Illinois, Iowa, Minnesota, and Wisconsin, certain counties in Indiana, Michigan's Upper Peninsula, as well as Cass County, North Dakota, the city of St. Louis, Missouri, and St. Louis County, Missouri.  Plaintiffs reach this conclusion by excluding competitors located more than 160 miles from a Supervalu distribution center because they claim that those competitors could not practicably reach

Supervalu's customers. By contrast, C&S disputes that Plaintiffs have established the alleged relevant geographic market because Plaintiffs' alleged geographic market fails to include (1) relevant competitors located outside of these areas (for example, competitors located in Nebraska) and (2) competitors located more than 160 miles from Supervalu's distribution centers.

In determining whether Plaintiffs have met their burden and demonstrated that their proposed geographic market is proper, you may consider several factors, including:

- The geographic area in which Supervalu sells and where Supervalu's customers are located;

- The geographic area to which customers turn for supply of the product;

- The geographic area to which customers have turned or have seriously considered turning;

- The transportation cost differences between areas;

- The geographic areas that wholesalers view as potential sources of competition; and

- Whether governmental licensing requirements, taxes, or quotas have the effect of limiting competition in certain areas.

If you find that the Plaintiffs have proven a relevant geographic market, then you should continue to evaluate the remainder of Plaintiffs' claim. However, if you find that the Plaintiffs have failed to prove such a market, then you must find in C&S's favor on this claim.

### D.   *Rule of Reason—Evidence of Competitive Benefits*

If you find that Plaintiffs have proven that there was an unwritten agreement—separate and apart from the AEA—and that the unwritten agreement resulted in

substantial harm to competition in a relevant market, then you next must determine whether the restraint also benefits competition in other ways.  If you find that the alleged unwritten agreement does result in competitive benefits, then you also must consider whether the restraint was reasonably necessary to achieve the benefits.  If Plaintiffs prove that the same benefits could have been readily achieved by other, reasonably available alternative means that create substantially less harm to competition, then they cannot be used to justify the restraint.

### E.    Rule of Reason—Balancing the Competitive Effects

If you find that the challenged restraint was reasonably necessary to achieve competitive benefits from the transaction between C&S and Supervalu, then you must balance those competitive benefits against the competitive harm resulting from the same restraint. If the competitive harm substantially outweighs the competitive benefits, then the alleged unwritten agreement is unreasonable.  If the competitive harm does not substantially outweigh the competitive benefits from the transaction between C&S and Supervalu, then the alleged unwritten agreement is not unreasonable.  In conducting this analysis, you must consider the benefits and harm to competition and grocers, not just to a single competitor or group of grocers.  Plaintiffs bear the burden of proving that the anticompetitive effect of the conduct substantially outweighs its benefits.

**Authority: ABA Model Jury Instructions in Civil Antitrust Cases (2016 ed.), Ch. 1, C.1–4, Ch. 3, A.3,4,6.**

**JURY INSTRUCTION NO. ___**
**[Injury and Causation]**

(C&S REQUESTS THAT THE COURT ADD THE BOLDED LANGUAGE BELOW
TO THE INJURY AND CAUSATION INSTRUCTION)

If you find that C&S has violated the Sherman Act, then you must decide if Plaintiffs are entitled to recover damages from C&S.

Plaintiffs are entitled to recover damages for an injury to their business or property if they can establish three elements of injury and causation:

1.   Plaintiffs were in fact injured **by Supervalu's overcharges** as a result of C&S's alleged violation of the antitrust laws;

2.   C&S's alleged illegal conduct was a material cause of Plaintiffs' injury; and

3.   Plaintiffs' injury **in the form of Supervalu overcharges** is an injury of the type that the antitrust laws were intended to prevent.

The first element is sometimes referred to as "injury in fact" or "fact of damage." For Plaintiffs to establish that they are entitled to recover damages, they must prove that they were injured as a result of C&S's alleged violation of the antitrust laws.  Proving the fact of damage does not require Plaintiffs to prove the dollar value of their injury.  It requires only that Plaintiffs prove that they were in fact injured by C&S's alleged antitrust violation. If you find that Plaintiffs have established that they were in fact injured, you may then consider the amount of Plaintiffs' damages. It is important to understand, however, that injury and amount of damage are different concepts and that you cannot consider the amount of damage unless and until you have concluded that Plaintiffs have established that they were in fact injured.

Plaintiffs must also offer evidence that establishes by a preponderance of the evidence that C&S's alleged illegal conduct was a material cause of Plaintiffs' **alleged** injury. This means that Plaintiffs must have proved that some damage occurred to them as a result of C&S's alleged antitrust violation, and not some other cause. Plaintiffs are not required to prove that C&S's alleged antitrust violation was the sole cause of their alleged injury; nor need Plaintiffs eliminate all other possible causes of injury. It is enough if Plaintiffs have proved that the alleged antitrust violation was a material cause of their alleged injury in the form of Supervalu overcharges.

Finally, Plaintiffs must establish that their alleged injury is the type of injury that the antitrust laws were intended to prevent. This is sometimes referred to as "antitrust injury." If Plaintiffs' **alleged** injuries were caused by a reduction in competition, acts that would lead to a reduction in competition, or acts that would otherwise harm grocers, then Plaintiffs' **alleged** injuries are antitrust injuries. On the other hand, if Plaintiffs' **alleged** injuries were caused by heightened competition, the competitive process itself, or by acts that would benefit grocers, then Plaintiffs' alleged injuries are not antitrust injuries and Plaintiffs may not recover damages for those injuries under the antitrust laws.

In summary, if Plaintiffs can establish that they were in fact injured by C&S's conduct **because it resulted in Supervalu charging higher prices**, that C&S's conduct was a material cause of Plaintiffs' alleged injury, and that Plaintiffs' alleged injury was the type that the antitrust laws were intended to prevent, then Plaintiffs are entitled to recover damages for the injury to their business or property.

***Authority: ABA Model Jury Instructions in Civil Antitrust Cases (2016 ed.), Ch. 6, A.1.***

## JURY INSTRUCTION NO. ____
### [Business and Property][14]

Plaintiffs must establish that the injury they claim to have suffered was an injury to their business or property. The term "business" includes any commercial interest or venture. Plaintiff has been injured in its business if you find that it has suffered injury to any of its commercial interests or enterprises as a result of C&S's alleged antitrust violation. The term "property" includes anything of value Plaintiffs own, possess, or in which Plaintiffs have a protectable legal interest.  Plaintiffs have been injured in their property if you find that anything of value that they own, possess, or have a legal interest in has been damaged as a result of C&S's alleged antitrust violation. Plaintiffs have been injured in their property if you find that they have paid an inflated price for goods, serves, any legal interest of value, or have lost money as a result of C&S's alleged antitrust violation.

*Authority: ABA Model Jury Instructions in Civil Antitrust Cases (2016 ed.), Ch. 6, A.2.*

---

[14] C&S requests that the Court issue this instruction to the jury if C&S's proposed additions to the Injury and Causation instruction are not adopted by the Court.

**JURY INSTRUCTION NO. ___**
**[Damages—Causation and Disaggregation]**

(TO BE INSERTED AFTER BASIS FOR CALCULATING DAMAGES
INSTRUCTION OR, IF INCLUDED,
JOINT & SEVERAL LIABILITY INSTRUCTION)

If you find that C&S violated the antitrust laws and that Plaintiffs were injured by that violation, Plaintiffs are entitled to recover for such injury that was the direct result or likely consequence of the unlawful acts of C&S. Plaintiffs bear the burden of showing that their alleged injuries from higher prices charged by Supervalu were caused by C&S's antitrust violation, as opposed to any other factors. If you find that Plaintiffs' alleged injuries were caused in part by C&S's alleged antitrust violation and in part by other factors, then you may award damages only for that portion of Plaintiffs' alleged injuries that was caused by C&S's alleged antitrust violation.

Plaintiffs claim that they suffered injury because they allegedly paid higher ABS fees to Supervalu for certain groceries than they would have paid if the alleged Sherman Act violation had not occurred.  C&S claims that Plaintiffs did not pay higher ABS fees to Supervalu by reason of any unlawful conduct on C&S's part or, alternatively, that any alleged higher prices charged by Supervalu occurred as a result of other factors that have nothing to do with the alleged antitrust violation. Plaintiffs are not entitled to recover for changes in price that resulted solely from lawful causes arising from the normal course of business activity. The presence of these factors does not mean Plaintiffs did not suffer antitrust injury, but Plaintiffs are not entitled to recover for damages caused by them or

other factors unrelated to C&S alleged conduct. Plaintiffs only may recover for damages caused by the alleged antitrust violation.

Plaintiffs bear the burden of proving damages by a preponderance of the evidence, including apportioning damages between lawful and unlawful causes. If you find that Plaintiffs were injured by C&S's alleged antitrust violation, and there is a reasonable basis to apportion Plaintiffs' alleged injury between lawful and unlawful causes, then you may award damages.

If you find that Plaintiffs' alleged injuries from alleged higher prices charged by Supervalu were caused by factors other than C&S's alleged antitrust violation, then you must return a verdict for C&S. If you find that there is no reasonable basis to apportion Plaintiffs' alleged injury between lawful and unlawful causes, or that apportionment can only be accomplished through speculation or guesswork, then you may not award any damages at all.

*Authority: ABA Model Jury Instructions in Civil Antitrust Cases (2016 ed.), Ch. 6, B.4.*

## JURY INSTRUCTION NO. 27
### [Class Damages]

### (C&S REQUESTS THAT THE COURT ADD THE BOLDED LANGUAGE BELOW TO THE CLASS DAMAGES INSTRUCTION)

Plaintiffs are seeking to recover overcharge damages on behalf of five classes of purchasers: grocers who purchased from the Champaign Distribution Center Non Arbitration Class,[15] grocers who purchased from the Champaign Distribution Center Arbitration Class,[16] grocers who purchased from the Green Bay Distribution Center Class,[17] grocers who purchased from the Hopkins Distribution Center Class,[18] and grocers who purchased from the Pleasant Prairie Distribution Center Class.[19]

---

[15] All customers that paid ABS fees on wholesale grocery products in all four SuperValu ABS product categories (grocery, dairy, frozen, and general merchandise/health and beauty care) purchased directly from SuperValu's Champaign, Illinois DC from December 31, 2004 through September 13, 2008 (the "Class Period"), are located in the relevant geographic market, and did not have an arbitration agreement with SuperValu during the Class Period. [ECF No. 150 at 31.]

[16] All customers that paid ABS fees on wholesale grocery products in all four SuperValu ABS product categories (grocery, dairy, frozen, and general merchandise/health and beauty care) purchased directly from SuperValu's Champaign, Illinois DC from December 31, 2004 through September 13, 2008, are located in the relevant geographic market, and had an arbitration agreement with SuperValu during the Class Period. [*Id.* at 31-32.]

[17] All customers that paid ABS fees on wholesale grocery products in all four SuperValu ABS product categories (grocery, dairy, frozen, and general merchandise/health and beauty care) purchased directly from SuperValu's Green Bay, Wisconsin DC from December 31, 2004 through September 13, 2008, and are located in the relevant geographic market. [*Id.* at 32.]

[18] All customers that paid ABS fees on wholesale grocery products in all four SuperValu ABS product categories (grocery, dairy, frozen, and general merchandise/health and beauty care) purchased directly from SuperValu's Hopkins, Minnesota DC from December 31, 2004 through September 13, 2008, and are located in the relevant geographic market. [*Id.*]

[19] All customers that paid ABS fees on wholesale grocery products in all four SuperValu ABS product categories (grocery, dairy, frozen, and general merchandise/health and beauty care)

To award damages for the classes, you do not need to determine the overcharge paid by each class member with absolute mathematical certainty or precision. It is sufficient for you to determine the average overcharge paid by class members or estimate the overcharge paid by class members, as long as the average or estimate is based on evidence and reasonable inferences. You may not base your damages award on guesswork or speculation. **If determining the amount of damages requires you to guess or speculate, or make speculative assumptions or inferences, you may not award damages.**

*Authority: ABA Model Jury Instructions in Civil Antitrust Cases (2016 ed.), Ch. 6, B.7; Sep. 9, 2016 Am. Redacted Mem. Op. & Order at 31-32 (ECF No. 651).*

---

purchased directly from SuperValu's Pleasant Prairie, Wisconsin DC from December 31, 2004 through September 13, 2008, and are located in the relevant geographic market. [*Id.*]

## JURY INSTRUCTION NO. ___
### [Selection of Foreperson; Special Verdict]

### (C&S REQUESTS THAT THE COURT ADD THE BOLDED LANGUAGE BELOW TO THE SELECTION OF FOREPERSON/SPECIAL VERDICT INSTRUCTION)

Upon retiring to the jury room, you will select one of your number to act as your foreperson. The foreperson will preside over your deliberations and will be your spokesperson here in Court. A form of special verdict has been prepared for your convenience. You will take this form to the jury room.

### (FORM OF SPECIAL VERDICT READ)

The answer to each question must be the unanimous answer of the jury. Your foreperson will write the unanimous answer of the jury in the space provided opposite each question.

Your verdict must be based solely on the evidence and on the law which I have given to you in my instructions. Nothing I have said or done is intended to suggest what your verdict should be – that is entirely for you to decide. **You must not permit sympathy, prejudice, or emotion to influence your verdict.**

After the jury has answered each of the questions asked, the foreperson will date and sign the special verdict as so completed, and the jury will then return with it to the courtroom.

*Authority: 8th CIR. CIVIL JURY INSTR. §§ 1.03, 3.06 (2017); U.S. Securities and Exchange Commission v. Marlon Quan, et al., Case 0:11-cv-00723-ADM-JSM (D. Minn., Feb. 11, 2014)*

Dated:  March 26, 2018                      Respectfully submitted,


s/ W. Joseph Bruckner
W. Joseph Bruckner (#147758)               Richard B. Drubel Matthew J. Henken
Elizabeth R. Odette (#0340698)             BOIES, SCHILLER & FLEXNER LLP
Kristen G. Marttila (#0346007)             26 South Main Street
Kate M. Baxter-Kauf (#392037)              Hanover, NH 03755
100 Washington Avenue South, Suite 2200    T: (603) 643-9090
Minneapolis, MN 55401                      F: (603) 643-9010
Tel:    (612) 339-6900                     rdrubel@bsfllp.com
Fax:    (612) 339-0981                     mhenken@bsfllp.com
wjbruckner@locklaw.com
erodette@locklaw.com
kgmarttila@locklaw.com
kmbaxter-kauf@locklaw.com                  Daniel A. Kotchen Daniel L. Low
                                           KOTCHEN & LOW LLP
                                           2300 M Street, NW Suite 800
                                           Washington, D.C. 20037
                                           T: (202) 416-1848
                                           F: (202) 280-1128
                                           dkotchen@kotchen.com
                                           dlow@kotchen.com

                                           *Co-Lead Counsel for Midwest Plaintiffs*


Dated:  March 26, 2018                      Respectfully submitted,


                                           **Weil, Gotshal & Manges LLP**

                                           By: *s/ David J. Lender*
                                           David J. Lender
                                           Eric S. Hochstadt
                                           Kajetan Rozga
                                           767 Fifth Avenue
                                           New York, NY 10153
                                           T: (212) 310-8000
                                           david.lender@weil.com
                                           eric.hochstadt@weil.com
                                           kajetan.rozga@weil.com

**Baker Botts LLP**

Christopher J. MacAvoy
Erik T. Koons
Andrew L. Lucarelli
Aaron S. Rabinowitz
1299 Pennsylvania Avenue N.W.
Washington, D.C. 20004–2400
T: (202) 639-7700
F: (202) 639-7890
christopher.macavoy@bakerbotts.com
erik.koons@bakerbotts.com
drew.lucarelli@bakerbotts.com
aaron.rabinowitz@bakerbotts.com

**Fredrikson & Byron, P.A.**

Todd A. Wind (#196514)
Nicole M. Moen (#329435)
200 South Sixth Street – Suite 4000
Minneapolis, MN 55402–1425
T: (612) 492–7046
F: (612) 492–7077
twind@fredlaw.com
nmoen@fredlaw.com

*Attorneys for Defendant C&S Wholesale
Grocers, Inc.*