# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

In re Wholesale Grocery Products
Antitrust Litigation

**JURY INSTRUCTIONS**
Civil No. 09-MD-2090 ADM/TNL

---

Richard B. Drubel, Esq., and Matthew J. Henken, Esq., Boies, Schiller & Flexner LLP, Hanover, NH; Daniel A. Kotchen, Esq., Kotchen & Low LLP, Washington, DC; and Elizabeth R. Odette, Esq., and W. Joseph Bruckner, Esq., Lockridge Grindal Nauen PLLP; Minneapolis, MN on behalf of the Midwest Plaintiffs.

David Lender, Esq., and Eric S. Hochstadt, Esq., Weil, Gotshal & Manges LLP, New York, NY, on behalf of Defendant C&S Wholesale Grocers, Inc.

---

Date submitted to jury: April 19, 2018

JURY INSTRUCTION NO. 1

Members of the jury, the instructions I gave at the beginning of the trial and during the trial remain in effect.  I now give you some additional instructions.

You must, of course, continue to follow the instructions I gave you earlier, as well as those I give you now.  This is true even though some of those I gave you at the beginning of trial are not repeated here.

The instructions I am about to give you now are in writing and will be available to you in the jury room.  I emphasize, however, that this does not mean they are more important than my earlier instructions.  Again, all instructions, whenever given and whether in writing or not, must be followed.

JURY INSTRUCTION NO. 2

Now that you have heard the evidence and the argument, it becomes my duty to give you the instructions of the Court as to the law applicable to this case.

It is your duty as jurors to follow the law as I shall state it to you, and to apply that law to the facts as you find them from the evidence in the case. You are not to single out one instruction alone as stating the law, but must consider the instructions as a whole. Neither are you to be concerned with the wisdom of any rule of law stated by me.

Counsel have quite properly referred to some of the governing rules of law in their arguments. If, however, any difference appears to you between the law as stated by counsel and that stated by the Court in these instructions, you are of course to be governed by the Court's instructions.

Nothing I say in these instructions is to be taken as an indication that I have any opinion about the facts of the case, or what that opinion is. It is not my function to determine the facts, but rather yours.

You must perform your duties as jurors without bias or prejudice as to any party. The law does not permit you to be governed by sympathy, prejudice or public opinion. All parties expect that you will carefully and impartially consider all of the evidence, follow the law as it is now being given to you, and reach a just verdict, regardless of the consequences.

JURY INSTRUCTION NO. 3

You have been allowed to take notes during the course of the trial, and you may take these notes with you to the jury room.  You should not consider these notes binding or conclusive, whether they are your notes or those of another juror.  The notes should be used as an aid to your memory and not as a substitute for it.  You should not give greater weight to a particular bit of evidence solely because it has been reduced to writing.  I want to make clear to you that it is your recollection of the evidence which should control, and you should disregard anything contrary to your own recollection which may appear from your own notes or those of another juror.

JURY INSTRUCTION NO. 4

There are, generally speaking, two types of evidence from which a jury may properly find the truth as to the facts of a case.  One is direct evidence - such as the testimony of any eyewitness.  The other is indirect or circumstantial evidence - the proof of a chain of circumstances pointing to the existence or non-existence of certain facts.

As a general rule, the law makes no distinction between direct or circumstantial evidence, but simply requires that the jury find the facts in accordance with the greater weight of all the evidence in the case, both direct and circumstantial.

JURY INSTRUCTION NO. 5

"Evidence" includes the testimony of witnesses; documents and other things received as exhibits; any facts that have been stipulated--that is, formally agreed to by the parties.  Certain things are not evidence:

1.  Statements, arguments, questions and comments by lawyers are not evidence.

2.  Exhibits that were identified by a party but were not offered or received in evidence are not evidence.

3.  Objections are not evidence.  Lawyers have a right and sometimes an obligation to object when they believe something is improper.  If I sustained an objection to a question or an exhibit, you must ignore the question or the exhibit and must not try to guess what the information might have been.

4.  Testimony and exhibits that I struck from the record, or told you to disregard, are not evidence and must not be considered.

5.  Anything you saw or heard about this case outside the courtroom is not evidence.

JURY INSTRUCTION NO. 6

The burden is on the Plaintiffs to prove every essential element of their claim by a greater weight of the evidence, which is also referred to as the "preponderance of the evidence." If the proof should fail to establish any essential element of the Plaintiffs' claim by a greater weight of the evidence in the case, you may not find for the Plaintiffs on that claim.

To "establish by the greater weight of the evidence" means to prove that something is more likely so than not so. In other words, the greater weight of the evidence in the case means such evidence as, when considered and compared with that opposed to it, has more convincing force, and produces in your minds belief that what is sought to be proved is more likely true than not true. This rule does not, of course, require proof to an absolute certainty, since proof to an absolute certainty is seldom possible in any case.

You have probably heard the phrase "proof beyond a reasonable doubt." That is stricter than "more likely true than not true." It applies in criminal cases, but not in this civil case, so put it out of your mind.

In determining whether any fact in issue has been proved by the greater weight of the evidence in the case, the jury may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

JURY INSTRUCTION NO. 7

You are to consider only the evidence in the case.  But in your consideration of the evidence you are not limited to the bald statements of the witnesses.  In other words, you are not limited to what you see and hear as the witnesses testify.  You are permitted to draw, from the facts which you find have been proved, such reasonable inferences as seem justified in light of your experience.

"Inferences" are deductions or conclusions which reason and common sense lead you to draw from facts that have been established by the evidence in the case.

You will make your decision based on what you recall of the evidence.  You will not have a written transcript to consult.

JURY INSTRUCTION NO. 8

In deciding what the facts are, you may have to decide what testimony you believe and what testimony you do not believe.  You may believe all of what a witness said, or only part of it, or none of it.

In deciding what testimony to believe, you may consider the witness's intelligence, the opportunity the witness had to have seen or heard the things testified about, the witness' memory, any motives that witness may have for testifying a certain way, the manner of the witness while testifying, whether that witness said something different at an earlier time, the general reasonableness of the testimony, and the extent to which the testimony is consistent with any evidence that you believe.

In deciding whether or not to believe a witness, keep in mind that people sometimes hear or see things differently and sometimes forget things.  You need to consider therefore whether a contradiction is an innocent misrecollection or lapse of memory or an intentional falsehood, and that may depend on whether it has to do with an important fact or only a small detail.

JURY INSTRUCTION NO. 9

The rules of evidence ordinarily do not permit witnesses to testify as to opinions or conclusions.  An exception to this rule exists as to those whom we call "expert witnesses." Witnesses who, by education and experience, have become expert in some art, science, profession, or calling, may state their opinions as to relevant and material matters in which they profess to be expert, and may also state their reasons for the opinion.

Expert opinion testimony should receive whatever weight and credit, if any, you think appropriate, given all the other evidence in the case.  In weighing the expert witness' testimony, you may consider his qualifications, the reasons he gave for his opinions, the reliability of the information supporting those opinions, and the compensation he received in connection with this case.  To the extent you find the expert witness' opinion testimony credible, you may rely on it. To the extent you do not, you need not rely on his testimony.

JURY INSTRUCTION NO. 10

A witness may be discredited or impeached by contradictory evidence; or by evidence that at some other time the witness has said or done something, or has failed to say or do something which is inconsistent with the witness's present testimony.

If you believe any witness has been impeached and thus discredited, it is your exclusive province to give the testimony of that witness such credibility, if any, as you may think it deserves.

If a witness is shown knowingly to have testified falsely concerning any material matter, you have a right to distrust such witness's testimony in other particulars; and you may reject all the testimony of that witness or give it such credibility as you may think it deserves.

An act or omission is "knowingly" done, if voluntarily and intentionally, and not because of mistake or accident or other innocent reason.

JURY INSTRUCTION NO. 11

The law does not require any party to call as witnesses all persons who may have been present at any time or place involved in the case, or who may appear to have some knowledge of the matters at issue in this trial.  Nor does the law require any party to produce as exhibits all papers and things mentioned in the evidence in the case.

JURY INSTRUCTION NO. 12

The weight of the evidence is not necessarily determined by the number of witnesses testifying to the existence or non-existence of any fact.  You may find the testimony of a small number of witnesses as to any fact is more credible than the testimony of a larger number of witnesses to the contrary.

You are not bound to decide any issue of fact in accordance with the testimony of any number of witnesses which does not produce in your minds belief in the likelihood of truth, as against the testimony of a lesser number of witnesses or other evidence which does produce such belief in your minds.

The test is not which side brings the greater number of witnesses or presents the greater quantity of evidence; but which witness, and which evidence, appeals to your minds as being most accurate and otherwise trustworthy.

The testimony of a single witness which produces in your minds belief in the likelihood of truth is sufficient for the proof of any fact, and would justify a verdict in accordance with such testimony even though a number of witnesses may have testified to the contrary, if, after consideration of all the evidence in the case, you hold greater belief in the accuracy and reliability of the one witness.

JURY INSTRUCTION NO. 13

Some exhibits received into evidence during the trial may contain portions that have been redacted. This means that portions have been blocked out and cannot be viewed. You are not to speculate as to what has been redacted or why.

JURY INSTRUCTION NO. 14

Certain demonstrative exhibits have been shown to you in Power Point presentations during the trial to help explain the facts in the case.  Those demonstrative exhibits are used for convenience.  They are not themselves evidence or proof of any facts.  If they do not correctly reflect the facts shown by the evidence in the case, you should disregard these demonstrative exhibits and determine the facts from the underlying evidence.

However, certain schedules, summaries, or charts have been admitted in evidence.  You may use those schedules, summaries, or charts as evidence, even though the underlying documents and records are not here.  However, if the accuracy or authenticity of those schedules, summaries, or charts has been challenged, it is for you to decide how much weight, if any, you will give to them.  In making that decision, you should consider all of the testimony you hear about the way in which they were prepared.

JURY INSTRUCTION NO. 15

During the trial of this case, certain testimony has been presented to you by way of deposition, consisting of sworn recorded answers to questions asked of the witness in advance of the trial by one or more of the attorneys for the parties to the case.  The testimony of a witness who, for some reason, cannot be present to testify from the witness stand may be presented in writing under oath or on a video recording played on a computer.  Such testimony is entitled to the same consideration, and is to be judged as to credibility, and weighted, and otherwise considered by the jury, in so far as possible, in the same way as if the witness had been present, and had testified from the witness stand.

JURY INSTRUCTION NO. 16

As I did at the beginning of this case, I will give you a brief summary of each side's contentions. I will then provide you with detailed instructions on what the Plaintiffs must prove to prevail on their claims.

This is an antitrust case brought by Plaintiffs, a group of retail grocers in the Midwest, against C&S, a grocery wholesaler. The Plaintiffs contend that C&S entered into an agreement with another wholesaler, SuperValu, to divide customers and territories along geographic lines, and that as a result of the division the retail grocers were overcharged for certain categories of grocery products. The Plaintiffs claim that C&S's conduct violated a federal antitrust law named the Sherman Act.

C&S denies the allegations. C&S argues there was no such agreement and that there is no credible evidence that the Plaintiffs were overcharged for their grocery products.

JURY INSTRUCTION NO. 17

As I told you at the beginning of trial, this trial is part of a larger case involving other plaintiffs and another defendant, SuperValu. Although you heard testimony about SuperValu and possibly other parties involved in the larger case, the only claim for you to determine in this trial is the plaintiffs' claim against C&S under the Sherman Act.

JURY INSTRUCTION NO. 18

The purpose of the Sherman Act is to preserve free and unfettered competition in the marketplace. The Sherman Act rests on the central premise that competition produces the best allocation of our economic resources, the lowest prices, the highest quality, and the greatest material progress.

JURY INSTRUCTION NO. 19

Plaintiffs challenge C&S's conduct under Section 1 of the Sherman Act. Section 1 prohibits contracts, combinations, and conspiracies that unreasonably restrain trade.

The Sherman Act makes unlawful certain agreements which, because of their harmful effect on competition and lack of any redeeming virtue, are conclusively presumed to be unreasonable restraints on trade without inquiry about the precise harm they have caused or the business excuse for their use.  Included in this category of unlawful agreements are those agreements the terms of which fix prices, allocate customers or territories, or rig bids; in connection with such an agreement, you need not be concerned with whether the agreement was reasonable or unreasonable, or the justifications for the agreement, or the harm done by it, and it is not a defense that the parties thereto may have acted with good motives, or may have thought that what they were doing was legal, or that the conspiracy may have had some good results.

The unlawful agreement alleged by Plaintiffs in this case is an unwritten agreement between C&S and SuperValu that restricted competition more broadly than the terms that were written in the Asset Exchange Agreement ("AEA").  I will refer to this as the alleged "Unwritten Agreement."

JURY INSTRUCTION NO. 20

Plaintiffs claim that C&S violated Section 1 of the Sherman Act by entering into an Unwritten Agreement with SuperValu to allocate customers and territories along geographic lines.  Allocate means to divide.

A business has the right to select its own geographic area or territory in which it will sell its products or services.  Likewise, a business may decide not to sell its products or services in a particular area or territory, provided that the decision results from the exercise of an independent business judgment and not from any agreement with a competitor or potential competitor.  The Sherman Act, however, prohibits agreements between competitors or potential competitors to allocate the territories or geographic areas in which they will market or sell their respective products or services.

A conspiracy to allocate territories or geographic areas is an agreement between two or more competitors not to compete in territories or areas in which they would have otherwise competed.  By way of example, this includes an agreement by two competitors not to compete with each other in particular geographic areas; to confine their sales efforts to particular or different territories; to require one to discontinue sales in an area where the other will continue to sell; or to not submit competitive bids in certain territories.

To prevail on this claim against C&S, Plaintiffs must prove each of the following elements by a preponderance of the evidence:

    (1)    C&S and SuperValu were competitors or potential competitors;

    (2)    C&S and SuperValu entered into a conspiracy—specifically, the Unwritten Agreement—in which C&S agreed that it would not compete with Supervalu for new customers in certain territories or geographic

areas; and

(3)     Plaintiffs were injured in their business or property because of the

Unwritten Agreement.

In deciding whether the second element has been proven, you should refer to Jury

Instructions 21, 22, and 23 to determine whether Plaintiffs have proven an Unwritten Agreement.

In deciding whether the third element has been met, you should refer to Jury Instruction

24 to determine whether Plaintiffs were injured in their business or property because of the

alleged Unwritten Agreement.

If you find that the evidence is insufficient to prove any of these elements as to C&S,

then you must find for C&S and against Plaintiffs on this claim.  If you find that the evidence is

sufficient to prove each element as to C&S, then you must find for Plaintiffs and against C&S on

this claim.

JURY INSTRUCTION NO. 21

A conspiracy is an agreement or understanding between two or more persons to restrain trade.   To prove the existence of a conspiracy, Plaintiffs must prove both of the following elements by a preponderance of the evidence:

      (1)     that the alleged conspiracy existed; and

      (2)     that C&S knowingly became a member of that conspiracy.   To act knowingly means to participate deliberately, and not because of mistake or accident or other innocent reason.

The basis of a conspiracy is an agreement or understanding between two or more persons. An agreement or understanding between two or more persons exists when they share a commitment to a common scheme.  To establish the existence of a conspiracy, the evidence need not show that its members entered into any formal or written agreement.  The agreement itself may have been entirely unspoken.  A person can become a member without full knowledge of all of the details of the conspiracy, the identity of all of its members, or the parts such members played in the charged conspiracy.  The members of the conspiracy need not necessarily have met together, directly stated what their object or purpose was to one another, or stated the details or the means by which they would accomplish their purpose.  To prove a conspiracy existed, the evidence must show that the alleged members of the conspiracy came to an agreement or understanding among themselves to accomplish a common purpose.

A conspiracy may be formed without all parties coming to an agreement at the same time. Similarly, it is not essential that all persons acted exactly alike, nor is it necessary that they all possessed the same motive for entering the agreement.  It is also not necessary that all of the means or methods claimed by Plaintiffs were agreed upon to carry out the alleged conspiracy,

nor that all of the means or methods that were agreed upon were actually used or put into operation, nor that all the persons alleged to be members of the conspiracy were actually members.  It is the agreement or understanding to restrain trade by dividing territory and customers along geographic lines that constitutes a conspiracy.  Therefore, you may find a conspiracy existed regardless of whether it succeeded or failed.

Plaintiffs may prove the existence of the alleged conspiracy through direct evidence, circumstantial evidence, or both.  Direct evidence is explicit and requires no inferences to establish the existence of the alleged conspiracy. Direct evidence of an agreement may not be available, and therefore a conspiracy also may be shown through circumstantial evidence.  You may infer the existence of a conspiracy from the circumstances, including what you find the alleged members actually did and the words they used.  Mere similarity of conduct among various persons, however, or the fact that they may have associated with one another and may have met or assembled together, does not by itself establish the existence of a conspiracy.  If they acted similarly but independently of one another, without any agreement among them, then there would not be a conspiracy.

In determining whether an agreement or understanding between two or more persons has been proved, you must view the evidence as a whole and not piecemeal.

JURY INSTRUCTION NO. 22

Under the law, a corporation is a person, but it acts only through its agents.  A corporation's agents include its directors, officers, employees, or others acting on its behalf. A corporation is not capable under the law of conspiring with its own agents, unincorporated divisions, or wholly owned subsidiaries.  Through its agents, however, a corporation is capable of conspiring with other persons or independent corporations.

A corporation is legally bound by the acts and statements of its agents or employees done or made within the scope of the agent's employment or apparent authority.

Acts done within the scope of employment are acts performed on behalf of a corporation and directly related to the performance of the duties that agent has general authority to perform. Apparent authority is the authority that persons outside the corporation could reasonably believe the agent would have, judging from his or her position within the company, the responsibilities previously entrusted to the person or the office, and the circumstances surrounding his or her past conduct.  An agent can have apparent authority even when, despite these appearances, the agent is actually acting in a dishonest, fraudulent, or anticompetitive manner. To summarize, for a corporation to be legally responsible for the acts or statements of its agents, you must find that the agent was acting within the scope of his or her employment with apparent authority.

The fact that a corporation has instructed its agents not to violate the antitrust laws does not excuse the corporation from responsibility for the unlawful acts of its agents done within the scope of their employment or apparent authority.

A corporation is entitled to the same fair trial as a private individual.  The acts of a corporation are to be judged by the same standard as the acts of a private individual, and you

may hold a corporation liable only if such liability is established by the preponderance of the

evidence.  All persons, including corporations, are equal before the law.

JURY INSTRUCTION NO. 23

Plaintiffs contend that C&S and SuperValu engaged in similar conduct, namely they did not compete for business in the Midwest and New England between 2003 and 2008.  Plaintiffs further contend that this conduct, when considered with other evidence, shows that an unwritten agreement existed between C&S and Supervalu to allocate the Midwest and New England markets to each of themselves.  In response, C&S claims that no unwritten agreement existed and that it did compete for business in the Midwest between 2003 and 2008.

If you find that C&S and SuperValu did not compete for business in the Midwest and New England, this does not by itself establish the existence of an Unwritten Agreement among C&S and Supervalu to divide the Midwest and New England markets among themselves.  C&S's behavior may be no more than the result of the exercise of its independent business judgment.  A business has the right to select the geographic area or territory in which it will sell its products or services and the terms and conditions on which it will do business with others.  Likewise, it is permissible for a business to decide not to sell its products or services in a particular area or territory, provided that the decision results from the exercise of an independent business judgment and not from any agreement with a competitor.

You must decide whether C&S's decision about whether and how to do business in the Midwest was, more probably than not, the result of an Unwritten Agreement or understanding between C&S and SuperValu that was above and beyond the written AEA.  You may infer that a conspiracy existed only if you find that the evidence, when viewed as a whole, makes it more likely than not that C&S and SuperValu had an agreement or understanding with one another than that they acted independently of each other.  In making this determination, you should consider the similar conduct against the entire background in which it took place.  The evidence,

when viewed all together, must satisfy you that it is more likely that C&S's actions in the Midwest were the product of an Unwritten Agreement with Supervalu rather than a product of C&S's own independent decisions.

JURY INSTRUCTION NO. 24

Plaintiffs have been injured in their business if you find that they have paid an inflated

price for goods or services or have lost money as a result of C&S's alleged antitrust violation.

JURY INSTRUCTION NO. 25

If you find that C&S has violated the Sherman Act, then you must decide if Plaintiffs are entitled to recover damages from C&S.

Plaintiffs are entitled to recover damages for an injury to their business or property if they can establish three elements of injury and causation:

1.  Plaintiffs were in fact injured as a result of C&S's alleged violation of the antitrust laws;

2.  C&S's alleged illegal conduct was a material cause of Plaintiffs' injury; and

3.  Plaintiffs' injury is an injury of the type that the antitrust laws were intended to prevent.

The first element is sometimes referred to as "injury in fact" or "fact of damage." For Plaintiffs to establish that they are entitled to recover damages, they must prove that they were injured as a result of C&S's alleged violation of the antitrust laws. Proving the fact of damage does not require Plaintiffs to prove the dollar value of their injury. It requires only that Plaintiffs prove that they were in fact injured by C&S's alleged antitrust violation. If you find that Plaintiffs have established that they were in fact injured, you may then consider the amount of Plaintiffs' damages. It is important to understand, however, that injury and amount of damage are different concepts and that you cannot consider the amount of damage unless and until you have concluded that Plaintiffs have established that they were in fact injured.

Plaintiffs must also offer evidence that establishes by a preponderance of the evidence that C&S's alleged illegal conduct was a material cause of Plaintiffs' injury. This means that Plaintiffs must have proved that some damage occurred to them as a result of C&S's alleged antitrust violation, and not some other cause. Plaintiffs are not required to prove that C&S's

alleged antitrust violation was the sole cause of their alleged injury; nor need Plaintiffs eliminate all other possible causes of injury.  It is enough if Plaintiffs have proved that the alleged antitrust violation was a material cause of their alleged injury in the form of Supervalu overcharges.

Finally, Plaintiffs must establish that their alleged injury is the type of injury that the antitrust laws were intended to prevent.  This is sometimes referred to as "antitrust injury."  If Plaintiffs' injuries were caused by a reduction in competition, acts that would lead to a reduction in competition, or acts that would otherwise harm grocers, then Plaintiffs' injuries are antitrust injuries.  On the other hand, if Plaintiffs' injuries were caused by heightened competition, the competitive process itself, or by acts that would benefit grocers, then Plaintiffs' alleged injuries are not antitrust injuries and Plaintiffs may not recover damages for those injuries under the antitrust laws.

In summary, if Plaintiffs can establish that they were in fact injured by C&S's conduct, that C&S's conduct was a material cause of Plaintiffs' alleged injury, and that Plaintiffs' alleged injury was the type that the antitrust laws were intended to prevent, then Plaintiffs are entitled to recover damages for the injury to their business.

JURY INSTRUCTION NO. 26

If you find that C&S violated the antitrust laws and that this violation caused injury to Plaintiffs, then you must determine the amount of damages, if any, Plaintiffs are entitled to recover.  The fact that I am giving you instructions concerning the issue of Plaintiffs' damages does not mean that I believe Plaintiffs should, or should not, prevail in this case. If you reach a verdict for C&S on Plaintiffs' claim and find there was no Unwritten Agreement, you should not consider the issue of damages, and you may disregard the damages instruction that I am about to give.

The law provides that Plaintiffs should be fairly compensated for all damages to their business that were a direct result or likely consequence of the conduct that you have found to be unlawful.  If you find that Plaintiffs' alleged injuries were caused in part by C&S's alleged antitrust violation and in part by other factors, then you may award damages only for that portion of Plaintiffs' alleged injuries that was caused by C&S's alleged antitrust violation.

Antitrust damages are only compensatory, meaning their purpose is to put an injured plaintiff as near as possible in the position in which it would have been had the alleged antitrust violation not occurred.  The law does not permit you to award damages to punish a wrongdoer—what we sometimes refer to as punitive damages—or to deter particular conduct in the future.  Furthermore, you are not permitted to award to Plaintiffs an amount for attorneys' fees or the costs of maintaining this lawsuit.

JURY INSTRUCTION NO. 27

You are permitted to make just and reasonable estimates in calculating Plaintiffs' damages.  You are not required to calculate damages with mathematical certainty or precision.  However, the amount of damages must have a reasonable basis in the evidence and must be based on reasonable, non-speculative assumptions and estimates.  Damages may not be based on guesswork or speculation.  Plaintiffs must prove the reasonableness of each of the assumptions upon which the damages calculation is based.

If you find that Plaintiffs have provided a reasonable basis for determining damages, then you may award damages based on a just and reasonable estimate supported by the evidence.

If you find that Plaintiffs have failed to carry their burden of providing a reasonable basis for determining damages, then you may not award damages.

JURY INSTRUCTION NO. 28

Plaintiffs are seeking to recover overcharge damages on behalf of five classes of purchasers:  grocers who purchased from the Champaign Distribution Center Non Arbitration Class,  grocers who purchased from the Champaign Distribution Center Arbitration Class, grocers who purchased from the Green Bay Distribution Center Class, grocers who purchased from the Hopkins Distribution Center Class, and grocers who purchased from the Pleasant Prairie Distribution Center Class.

To award damages for the classes, you do not need to determine the overcharge paid by each class member with absolute mathematical certainty or precision.  It is sufficient for you to determine the average overcharge paid by class members or estimate the overcharge paid by class members, as long as the average or estimate is based on evidence and reasonable inferences.  You may not base your damages award on guesswork or speculation.  If determining the amount of damages requires you to guess or speculate, or make speculative assumptions or inferences, you may not award damages.

JURY INSTRUCTION NO. 29

Each participant in a conspiracy that violates the antitrust laws is jointly and severally liable for all of the damages resulting from the conspiracy.  This means that each conspirator is fully liable for all of the damages caused by the conspiracy and not solely for damages caused by an individual conspirator.

If you find that Plaintiffs have proven the existence of the alleged conspiracy, that C&S participated in the conspiracy, and that Plaintiffs are entitled to recover damages based on the other instructions in this case, then C&S would be liable for all damages caused by the conspiracy including overcharges by Supervalu.

JURY INSTRUCTION NO. 30

It is your duty, as jurors, to consult with one another, and to deliberate with a view to reaching an agreement, if you can do so without violence to individual judgment.  You must each decide the case for yourself, but only after an impartial consideration of the evidence in the case with your fellow jurors.  In the course of your deliberations, do not hesitate to reexamine your own views, and change your opinion, if convinced it is erroneous.  But do not surrender your honest conviction as to the weight or effect of evidence, solely because of the opinion of your fellow jurors, or for the mere purpose of returning a verdict.

Remember at all times that you are not partisans.  You are judges—judges of the facts. Your sole interest is to seek the truth from the evidence in the case.

JURY INSTRUCTION NO. 31

Upon retiring to the jury room, you will select one of your number to act as your presiding juror.  The presiding juror will preside over your deliberations and will be your spokesperson here in Court.  A form of special verdict has been prepared for your convenience. You will take this form to the jury room.

**(FORM OF SPECIAL VERDICT READ)**

The answer to each question must be the unanimous answer of the jury.  Your presiding juror will write the unanimous answer of the jury in the space provided opposite each question.

Your verdict must be based solely on the evidence and on the law which I have given to you in my instructions.  Nothing I have said or done is intended to suggest what your verdict should be -- that is entirely for you to decide.  You must not permit sympathy, prejudice, or emotion to influence your verdict.

After the jury has answered each of the questions asked, the presiding juror will date and sign the special verdict as so completed, and the jury will then return with it to the courtroom.

JURY INSTRUCTION NO. 32

If it becomes necessary during your deliberations to communicate with the Court, you may send a note by a court security officer, signed by your presiding juror or by one or more members of the jury.  No member of the jury should ever attempt to communicate with the Court by any means other than a signed writing, and the Court will never communicate with any member of the jury on any subject touching the merits of the case otherwise than in writing, or orally here in open Court.

You will note from the oath about to be taken by the court security officers that they too, as well as all other persons, are forbidden to communicate in any way or manner with any member of the jury on any subject touching the merits of the case.

Bear in mind also that you are never to reveal to any person - not even to the Court - how the jury stands, numerically or otherwise, on the questions before you, until after you have reached a unanimous verdict.

JURY INSTRUCTION NO. 33

Your duty is to both the Plaintiffs and the Defendant.  They each have a right to expect that you will see that justice is done.  Your responsibility should be borne courageously and without fear or favor.  It is not an arbitrary power, but one that must be exercised with fairness, sincere judgment and sound discretion.

The final test of the quality of your service will lie in the verdict you return to the Court, not in the opinions any of you hold as you retire from the case.  Remember, you are not partisans nor advocates but triers of fact.