# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

In re Wholesale Grocery Products
Antitrust Litigation

**ORDER**
Court File No. 09-MD-2090 ADM/TNL

This Order Relates to All Actions

---

W. Joseph Bruckner, Esq., Elizabeth R. Odette, Esq., and Kate M. Baxter-Kauf, Esq., Lockridge Grindal Nauen PLLP, Minneapolis, MN; Richard B. Drubel, Esq., Matthew J. Henken, Esq., and Jonathan R. Voegele, Esq., Boies, Schiller & Flexner LLP, Hanover, NH; and Daniel A. Kotchen, Esq., and Daniel L. Low, Esq., Kotchen & Low LLP, Washington, DC, on behalf of the Midwest Plaintiffs.

Edward T. Dangel III, Esq., Dangel & Mattchen, Edgartown, MA, on behalf of Plaintiffs DeLuca's Market Corp., JFM Market, Inc., and MJF Market, Inc.

Martin R. Lueck, Esq., Stephen P. Safranski, Esq., Jeffrey S. Gleason, Esq., Lisa L. Beane, Esq., Eric P. Barstad, Esq., and Geoffrey H. Kozen, Esq., Robins Kaplan LLP, Minneapolis, MN, on behalf of Defendant SuperValu, Inc.

David J. Lender, Esq., Eric S. Hochstadt, Esq., and Luna Ngan Barrington, Esq., Weil, Gotshal & Manges LLP, New York, NY; Erik T. Koons, Esq., Andrew L. Lucarelli, Esq., and Aaron S. Rabinowitz, Esq., Baker Botts LLP, Washington, DC; and Todd A. Wind, Esq., and Nicole M. Moen, Esq., Fredrikson & Byron, PA, Minneapolis, MN, on behalf of Defendant C&S Wholesale Grocers, Inc.

---

## I. INTRODUCTION

On November 26, 2018, the Clerk of Court entered two Cost Judgments for Defendant

C&S Wholesale Grocers, Inc. ("C&S") [Docket Nos. 1337, 1338] and two Cost Judgments for

Defendant SuperValu, Inc. ("SuperValu") [Docket Nos. 1339, 1340].  Motions for review of the

Cost Judgments have been filed by SuperValu [Docket No. 1341], C&S [Docket No. 1345],

Plaintiff DeLuca's Corporation ("DeLuca's") [Docket No. 1351],[1] Plaintiffs JFM Market, Inc.

---

[1] DeLuca's filed an identical Motion as Docket No. 1349.  Because Docket Nos. 1349 and 1351 are duplicates, the Court will consider Docket No. 1351 as the operative Motion.

and MFJ Market, Inc. (collectively, "Village Market") [Docket No. 1358], and jointly by Village Market and DeLuca's [Docket No. 1363]. For the reasons stated below, SuperValu and C&S' Motions are granted in part and denied in part, DeLuca's Motion is denied, Village Market's Motion is granted in part and denied in part, and the joint Motion by Village Market and DeLuca's is granted in part and denied in part.

## II. BACKGROUND

This multi-district litigation consolidated four putative class action lawsuits brought in 2009 by retail grocers in New England and the Midwest. Plaintiffs alleged that Defendants C&S and SuperValu conspired to allocate customers and territories in the New England and Midwest wholesale grocery markets, and that Defendants used the allocation to eliminate competition and charge the retailers supra-competitive prices. Second Consol. Am. Class Action Compl. [Docket No. 99] ¶¶ 34–44.

The Consolidated Class Action Complaint alleged two broad putative classes: (1) retailers who purchased products or related services from Defendants in the Midwest market (the "Midwest Class"); and (2) retailers who purchased such products or services in the New England market (the "New England Class"). See id. ¶ 67. Retailer D&G, Inc. ("D&G") was a named plaintiff in the Midwest Class, and DeLuca's was a named plaintiff in the New England Class. Id. ¶ 71. Both classes included a subclass of retailers who were party to an arbitration agreement with a Defendant during the class period. Id. Village Market was a named plaintiff in the New England arbitration subclass. Id.

In December 2009, the Court entered a pretrial order appointing three firms as Co-Lead Counsel in this case. See Pretrial Order No. 1 [Docket No. 15]. Among the firms appointed as

Co-Lead Counsel was DeLuca's individually-retained counsel.

In July 2011, while the parties were engaged in fact discovery, the Court dismissed the claims of Village Market and other arbitration subclass plaintiffs in favor of arbitration, and continued adjudicating the claims of the two lead plaintiffs, D&G and DeLuca's. See In re Wholesale Grocery Prods. Antitrust Litig., No. 09-MD-2090, 2011 WL 9558054, at *3-*4 (D. Minn. July 5, 2011). Village Market appealed the dismissal of its claims to the Eighth Circuit.

On July 16, 2012, this Court denied class certification of both proposed classes, determining that the plaintiffs could not show class-wide impact through common evidence. See In re Wholesale Grocery Prods. Antitrust Litig., No. 09-MD-2090, 2012 WL 3031085 (D. Minn. July 25, 2012) (redacted). The Court found that the "formulaic nature" of SuperValu's pricing method used in the Midwest market made a better case for certification of the Midwest Class than the New England Class. Id. at *16. Nevertheless, the Midwest Class could not prove impact by common evidence because each of SuperValu's distribution centers across the Midwest inserted different values into the pricing formula, requiring an analysis of each distribution center's fees and competitive conditions. Id. Following this ruling, D&G requested leave to move for certification of a narrower Midwest class of grocers who were charged using formulaic pricing and supplied by SuperValu's Champaign, Illinois distribution center. See Letter, Aug. 31, 2012 [Docket No. 362] ("August 2012 Letter"). DeLuca's made no request for a narrower New England class.

On January 11, 2013, the Court granted summary judgment for C&S and SuperValu against D&G and DeLuca's. In re Wholesale Grocery Prods. Antitrust Litig., No. 09-MD-2090, 2013 WL 140285 (D. Minn. Jan. 11, 2013). Based on the grant of summary judgment to

Defendants, the Court denied D&G's request for renewed class certification of the narrower Midwest Class as moot. Id. at *15. D&G appealed both the summary judgment ruling and the denial of Midwest class certification. Notice of Appeal [Docket No. 429]. DeLuca's did not appeal the January 2013 Order.

On February 13, 2013, while the summary judgment and Midwest Class certification appeal was pending, the Eighth Circuit reversed the dismissal of the arbitration subclass plaintiffs and remanded with instructions to consider whether some of these plaintiffs' arbitration agreements, including Village Market's agreement, were enforceable under a "successor-in-interest" theory. King Cole Foods, Inc. v. SuperValu, Inc., 707 F.3d 917 (8th Cir. 2013). This Court later ruled, and the Eighth Circuit affirmed, that arbitration was not compelled under a successor-in-interest theory. See In re Wholesale Grocery Prods. Antitrust Litig., No. 09-MD-2090, 2015 WL 1191826 (D. Minn. March 16, 2015); aff'd, In re Wholesale Grocery Prod. Antitrust Litig., 850 F.3d 344, 348 (8th Cir. 2017), amended (May 1, 2017).

On February 15, 2013, SuperValu and C&S timely filed Bills of Costs against D&G and DeLuca's. See SuperValu 2013 Bill of Costs [Docket No. 439]; C&S 2013 Bill of Costs [Docket No. 440]. Due to the pendency of D&G's appeal and the remand of Village Market and other plaintiffs' claims at that time, the Court held the 2013 Bills of Costs in abeyance.

In May 2014, the Eighth Circuit reversed summary judgment against D&G and remanded to the district court to consider whether to certify a narrower class of Midwest Plaintiffs that was based on which Midwest distribution center a plaintiff utilized. See In re Wholesale Grocery Prod. Antitrust Litig., 752 F.3d 728 (8th Cir. 2014).

Following the reversal of summary judgment against D&G, the Midwest Plaintiffs'

claims proceeded on a different schedule than the New England Plaintiffs' claims.  See Letter, Oct. 3, 2014 [Docket No. 487] at 2.  Additionally, the Midwest Plaintiffs continued to be represented by Lead Counsel, but New England plaintiff Village Market was represented by its individual counsel, Dangel & Mattchen.  Id.  Nevertheless, the New England and Midwest Plaintiffs agreed to coordinate discovery of their cases.  Id.

On September 7, 2016, the Court certified five classes of Midwest Plaintiffs.  See Mem. Op. Order, Sept. 7, 2016 [Docket No. 647].  In July 2017, a settlement was reached between D&G on behalf of the Champaign DC Non-Arbitration Class and Supervalu.  Under the Settlement Agreement [Docket No. 823, Attach. 1], SuperValu agreed to pay $8.75 million, and further agreed that "with respect to the Action, including this Settlement Agreement, Supervalu shall bear its own costs and attorneys' fees."  Settlement Agreement at 16.  In return, D&G and the Champaign Non-Arbitration Class agreed to release their claims against SuperValu.  Id. at 9, 11.  The Court granted final approval of the Settlement Agreement on November 16, 2017.  See Order Granting Mot. Final Approval Settlement [Docket No. 897].  The Midwest Plaintiffs continued to litigate their claims against C&S, and Village Market continued to litigate its claims against SuperValu.

In April 2018, the Court held a jury trial on the Midwest Plaintiffs' claims against C&S. The jury returned a verdict for C&S on April 19, 2018.  An amended final judgment for C&S was entered on May 23, 2018.  Am. J. [Docket No. 1273].  C&S timely filed a 2018 Bill of Costs [Docket No. 1270] against the Midwest Plaintiffs and renewed its request for the costs itemized in its 2013 Bill of Costs.

On July 27, 2018, the Court granted summary judgment to SuperValu on Village

Market's claims. Redacted Mem. Op. Order [Docket No. 1308]. Judgment for SuperValu was entered on July 30, 2018. J. [Docket No. 1304]. SuperValu timely filed a 2018 Bill of Costs [Docket No. 1317] against Village Market and renewed its request for the costs itemized in its 2013 Bill of Costs.

On November 26, 2018, the Court entered Cost Judgments on Defendants' 2013 and 2018 Bills of Costs as follows:

| Bill of Cost | Amount Claimed | Amount Allowed | Taxed Against |
|---|---|---|---|
| C&S 2013 | $428,372.90 | $33,585.07 | Midwest Plaintiffs, DeLuca's |
| C&S 2018 | $232,935.93 | $64,814.43 | Midwest Plaintiffs |
| SuperValu 2013 | $162,201.07 | $35,202.01 | Village Market, DeLuca's |
| SuperValu 2018 | $118,867.09 | $7,737.59 | Village Market |

Motions to review the Cost Judgments have been filed by DeLuca's, Village Market, and both Defendants.

## III.  DISCUSSION

### A.  Legal Standard

Federal Rule of Civil Procedure 54(d)(1) provides in relevant part:  "Unless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party."  A cost award must, however, fit within the categories of taxable costs enumerated in 28 U.S.C. § 1920.  Little Rock Cardiology Clinic PA v. Baptist Health, 591 F.3d 591, 601 (8th Cir. 2009).  The Supreme Court has emphasized that taxable costs under § 1920 "are limited to relatively minor, incidental expenses," and "are a fraction of the nontaxable expenses borne by litigants for attorneys, experts, consultants, and investigators."  Taniguchi v. Kan Pac. Saipan, Ltd., 566 U.S. 560, 573 (2012).

Although the district court has discretion in awarding costs, "the Rules presume that the prevailing party is entitled to costs." Lochridge v. Lindsey Mgmt. Co., 824 F.3d 780, 783 (8th Cir. 2016) (quoting Reger v. Nemours Found., Inc., 599 F.3d 285, 289 (3d Cir. 2010)). A losing party bears the burden of overcoming the presumption that the prevailing party may recover all of its allowable costs. Stanley v. Cottrell, Inc., 784 F.3d 454, 464 (8th Cir. 2015). A district court reviews a clerk's taxation of costs de novo. Farmer v. Arabian Am. Oil Co., 379 U.S. 227, 233 (1964).

**B.     C&S' Cost Judgments**

Motions for review of C&S' Cost Judgments have been filed by DeLuca's and C&S.

**1. DeLuca's Motion for Review**

DeLuca's seeks review of the Cost Judgment awarding $33,585.07 jointly and severally against DeLuca's and the Midwest Plaintiffs for amounts claimed in C&S' 2013 Bill of Costs. See Cost Judgment [Docket No. 1337]. DeLuca's argues that it should not be held liable on the Cost Judgment. DeLuca's states that the Midwest Plaintiffs do not object to DeLuca's being removed as a liable party.

DeLuca's contends it is not liable on the Cost Judgment because: its counsel did not play a prominent role in determining what discovery would be sought; the only discovery costs DeLuca's incurred were $1,015.50 for its own deposition; and DeLuca's stood to gain only a fraction of the damages sought by the Midwest and New England classes.

DeLuca's further argues that it could face financial ruin if it is held jointly and severally liable with the Midwest Plaintiffs. DeLuca's argues that if the Midwest Plaintiffs appeal the Cost Judgments and seek a stay, or if Eighth Circuit reverses the judgment against the Midwest

Plaintiffs, then C&S would be allowed to seek full costs against DeLuca's and potentially put it out of business. DeLuca's asks to be removed from the Cost Judgment so that it may "be free from the risk and worry of perhaps being left alone to pay all of the costs." DeLuca's Mem. Supp. Mot. Review [Docket No. 1352] at 4.

C&S opposes the Motion, arguing that DeLuca's actively participated in this case from 2009 to 2013 and should be held jointly and severally liable for the costs C&S incurred to defend this action during that time. C&S also argues that financial hardship does not release DeLuca's from the Cost Judgment.

In the Eighth Circuit, "[j]oint and several liability for costs is the general rule unless equity otherwise dictates." <u>Concord Boat Corp. v. Brunswick Corp.</u>, 309 F.3d 494, 497 (8th Cir. 2002). Individual pro rata liability is "inconsistent with the presumption embodied in Rule 54(d) of the Federal Rules of Civil Procedure that a prevailing party is entitled to recover all of its costs," because pro rata liability shifts the expense of collection and the risk of noncollection to the prevailing party. <u>Id.</u> In circumstances where all plaintiffs "were represented by the same counsel, had common theories of liability, and sought the same discovery," joint liability is appropriate because no individual plaintiff can be considered to have generated more costs than any other. <u>Id.</u> Even if individual plaintiffs seek varying amounts of damages, an exception to joint and several liability is not justified because such an exception would swallow the default rule. <u>Id.</u>

DeLuca's has not met its burden of showing that the Court should depart from the default rule of joint and several liability. Contrary to DeLuca's arguments that its counsel had a minimal role in determining the discovery to be sought and that it incurred almost no discovery

costs, DeLuca's chosen counsel—Meredith Cohen Greenfogel & Skirnick, P.C. —sought the position and was appointed as co-lead counsel in this multidistrict litigation in 2009, and was expressly responsible for coordinating discovery and other activities. <u>See</u> Pretrial Order No. 1 at 3–4. Additionally, DeLuca's asserted the same theory of liability as all other plaintiffs and benefitted from the discovery obtained on behalf of all plaintiffs. That DeLuca's may have been seeking less damages than other plaintiffs does not warrant an exception to the default rule of joint and several liability. <u>See</u> <u>Concord Boat</u>, 309 F.3d at 497 ("The district court's reason for allocating costs individually—that the [plaintiffs] sought varying amounts of damages—is not a sufficient reason to depart from [the general] rule.").

Similarly unpersuasive is DeLuca's argument that it will potentially suffer financial hardship if the Midwest Plaintiffs prevail on appeal and DeLuca's is forced to pay the Cost Judgment on its own. DeLuca's has not provided an affidavit or other evidence showing that it is financially incapable of satisfying the Cost Judgment, and even if it had, financial hardship is not a defense to a cost award. <u>See</u> <u>In re Derailment Cases</u>, 417 F.3d 840, 845 (8th Cir. 2005) (citing cases where costs were awarded against "indigent prisoners" and an individual plaintiff with "limited financial resources"). Additionally, although "[j]oint and several liability should not unfairly force any [individual plaintiff] to bear the costs alone," the solution is not to shift the risk of noncollection to the prevailing party by allocating costs individually. <u>Concord Boat</u>, 309 F.3d at 497. Rather, the losing parties should "allocate the risk of costs among themselves," and "any party satisfying the judgment c[an] seek contribution from the others." <u>Id.</u> Regardless of the outcome of the Midwest Plaintiffs' appeal, DeLuca's should look to the Midwest Plaintiffs, rather than to C&S, to share in the risks it took when choosing to litigate this case against C&S.

The amounts currently at issue in this high-stakes MDL litigation are very small in comparison to the risks all plaintiffs knowingly assumed when the litigation began.

DeLuca's Motion for Review of C&S' Cost Judgment against it is denied.

## 2. C&S's Motion for Review

### a. Electronically Stored Information Costs

The Clerk denied $372,206.83 for electronically stored information ("ESI") expenses requested in C&S' 2013 Bill of Costs. <u>See</u> Taxation Costs Summary [Docket No. 1337, Attach. 1] at 2. The costs were denied because "[f]ees incurred to produce documents for plaintiffs are not taxable by the clerk." <u>Id.</u> C&S argues that the ESI costs were for services akin to exemplification or copying, and are thus allowable under 28 U.S.C. § 1920(4).

As an initial matter, the Midwest Plaintiffs argue that none of C&S' ESI-related costs are recoverable because they were incurred in responding to discovery requests, and costs associated with responding to discovery requests may not be taxed. This argument is contrary to Eighth Circuit law, which clearly "establishes that district courts may tax costs for discovery-related copying." <u>Stanley</u>, 784 F.3d at 467 (internal quotations omitted). Thus, C&S' claimed ESI costs will be allowed if they fall within the purview of 28 U.S.C. § 1920(4).

Section 1920(4) authorizes a prevailing party to recover "[f]ees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case." 28 U.S.C. § 1920(4). An earlier version of § 1920(4) covered "[f]ees for exemplification and copies *of papers*," but Congress amended the statute on October 13, 2008 to include ESI by allowing "the costs of making copies *of any materials*" to be taxed. <u>CBT Flint Partners, LLC v. Return Path, Inc.</u>, 737 F.3d 1320, 1326 (Fed. Cir. 2013).

Although the Eighth Circuit has not yet addressed the extent to which ESI related charges are taxable under § 1920(4), other Circuit courts and courts within the Eighth Circuit permit recovery of ESI costs if the costs fall within the meaning of "exemplification" or "making copies." See, e.g., Race Tires Am., Inc. v. Hoosier Racing Tire Corp., 674 F.3d 158, 166–71 (3d Cir. 2012); In re Online DVD-Rental Antitrust Litig., 779 F.3d 914, 928 (9th Cir. 2015); CBT, 737 F.3d at 1328; Country Vintner of North Carolina, LLC v. E. & J. Gallo Winery, Inc., 718 F.3d 249, 258–62 (4th Cir. 2013)  Assoc. Elec. & Gas Ins. Servs. v. BendTec, Inc., No. 14–1602, 2016 WL 740409, *2–3 (D. Minn. Feb. 24, 2016); Jo Ann Howard & Assocs., P.C. v. Cassity, 146 F. Supp. 3d 1071, 1083 (E.D. Mo. 2015).  "Exemplification" has been construed by courts to mean the production of  illustrative evidence or the authentication of public records. Race Tires, 674 F.3d at 166; Country Vintner, 718 F.3d at 261–62.  "[M]aking copies" is interpreted to include scanning documents and converting native files into to a readable format. See Race Tires, 674 F.3d at 167; Country Vintner, 718 F.3d at 261; Assoc Elec., 2016 WL 740409, at *3; Hallmark Cards, Inc. v. Monitor Clipper Partners, LLC, No. 08–0840, 2013 WL 1155245, *1 (W.D. Mo. Mar. 20, 2013).

C&S has identified $1,049.29 in its 2018 Bill of Costs that were incurred in 2018 to electronically convert its trial exhibits into the file format used at trial.  Hochstadt Decl. [Docket No. 1270, Attach. 1] ¶ 8, Ex. 7.  These ESI costs are for illustrative evidence and thus qualify as fees for "exemplification."

C&S also seeks recovery of $372,206.83 in ESI costs requested in its 2013 Bill of Costs. The costs were incurred for the following services:  (1) ESI processing, (2) converting electronic files into Tagged Image File Format ("TIFF") images (the format required by the parties'

discovery protocol),[2] (3) scanning paper documents, (4) Optical Character Recognition ("OCR") (also required in the parties' discovery protocol), (5) bibliographic coding, (6) email restoration, and (7) vendor fees for loading and formatting data, technical checks and trouble shooting, creating production sets, data validations, and various other projects required to "exemplify" sales data. Shotlander Decl. [Docket No. 440, Attach. 1] ¶ 6.

Of the $372,206.83 requested for ESI in C&S' 2013 Bill of costs, $41,129.45 was incurred for scanning, converting files to TIFF images, and OCR'ing documents. See Shotlander Decl. ¶ 6.b., Table 4. These services fall within the purview of "making copies" and will be awarded.

The remaining services were broadly described as "ESI processing" or pertained to preliminary steps that were taken to produce the electronic discovery. "Section 1920(4) does not state that all steps that lead up to the production of copies of materials are taxable. It does not authorize taxation merely because today's technology requires technical expertise not ordinarily possessed by the typical legal professional. . . . Section 1920(4) authorizes awarding only the cost of making copies." Race Tires, 674 F.3d at 169. Just as the preparatory measures taken in pre-digital discovery to locate, collect, and review documents before producing copies were not taxable, so too the preliminary steps required to meet electronic discovery obligations are not recoverable under § 1920(4). Id. at 169–70 ("[G]athering, preserving, processing, searching, culling and extracting ESI simply do not amount to 'making copies.'").

Additionally, C&S provides no explanation of the tasks or processes performed in the

---

[2] See Rule 26(f) Report [Docket No. 70] Ex. B (Protocol for the Discovery of Electronically Stored Information).

subset of costs described as "ESI processing." Nor do the underlying invoices offer insight on the nature of the services and which, if any, equated to making electronic copies in the agreed-upon format. See Shotlander Decl. Ex. 4 (invoices for services described as "ESI Processing for Native review"). Thus, these services will not be taxed. See DVD-Rental Antitrust Litig., 779 F.3d at 928 ("The proper application of a narrowly construed § 1920(4) requires that the tasks and services for which an award of [ESI] costs is being considered must be described and established with sufficient specificity, particularity, and clarity as to permit a determination that costs are awarded for making copies.").

Accordingly, the Court will award $41,129.45 for ESI-related expenses requested in C&S' 2013 Bill of Costs as the costs of making copies, and will award $1,049.29 for ESI-related expenses requested in C&S' 2018 Bill of Costs as fees for exemplification.

### b. Expert Deposition Fees

The Cost Judgments for C&S limited the taxation of expert witness deposition fees to the statutory appearance fee and allowable travel expenses. The Clerk denied the remainder of C&S' claimed expert witness deposition fees because "[e]xpert witness fees beyond that of the statutory appearance fee and allowable travel expenses are not taxable by the clerk." Taxation Costs Summary [Docket No. 1337, Attach. 1] at 2; Taxation Costs Summary [Docket No. 1338, Attach. 1] at 2. C&S argues that it should have been awarded all of its expert witness deposition fees[3] because such fees are recoverable under Federal Rule of Civil Procedure 26(b)(4)(E).

Rule 26(b)(4)A) states that a "party may depose any person who has been identified as an

---

[3] C&S requested expert witness fees of $22,601.00 in its 2013 Bill of Costs and $168,136.55 in its 2018 Bill of Costs. See Cost J. [Docket No. 1337] at 1.

expert whose opinions may be presented at trial," and Rule 26(b)(4)(E)(i) instructs that "the court must require that the party seeking discovery . . . pay the expert a reasonable fee for time spent in responding to discovery." Stanley, 784 F.3d at 464 (quoting Fed. R. Civ. P. 26). The Eighth Circuit has held that, "[r]ead together, these rules allow for the recovery of fees related to [an expert witness'] deposition." Id. Although 28 U.S.C. § 1821(b) limits a witness' deposition attendance fee to $40 per day, "the flexible authorization for a 'reasonable fee' contained in Rule 26 supersedes the fee schedule outlined in § 1821(b)." Id. Thus, C&S is entitled to recover its expert deposition fees to the extent the fees are reasonable.

The Midwest Plaintiffs argue "the Court in its discretion should find the requested amount to be unreasonable," but have offered no rationale for why the fees are unreasonable. Midwest Pls.' Resp. [Docket No. 1377] at 14. Nevertheless, the Court has reviewed C&S' claimed deposition fees and finds them unreasonable to the extent that fees were incurred for time not spent in actual deposition. Although some courts have awarded compensation for "preparation" time, other courts have limited compensation to time the expert actually spent being deposed. See Hose v. Chicago & N. W. Transp. Co., 154 F.R.D. 222, 227 (S.D. Iowa 1994) (citing cases). One court has observed that "[a]n expert's deposition is in part a dress rehearsal for his testimony at trial and thus his preparation is part of trial preparation. One party need not pay for the other's trial preparation." Rhee v. Witco Chem. Corp., 126 F.R.D. 45, 47–48 (N.D. Ill. 1989). The Court finds this reasoning persuasive and will apply it here.

The amount of expert witness fees in C&S' 2013 Bill of Costs that were incurred during the expert's deposition is $2,925 charged by expert John Johnson for his March 2, 2012 deposition. See Shotlander Decl. at 8. These costs will be taxed against the Midwest Plaintiffs

and DeLuca's.

The amount of expert witness fees in C&S' 2018 Bill of costs that were incurred during the experts' depositions is $13,225, as set forth in the table below.  See Hochstadt Decl. at 20, 22, 25, 26.

| Name | Deposition Date | Hours Billed | Rate | Total |
|------|-----------------|--------------|------|-------|
| John Johnson | 6/1/2016 | 10.0 | $1,000 (less 50% paid by SuperValu) | $5,000 |
| John Johnson | 2/15/2017 | 9.0 | $1,000 (less 50% paid by SuperValu) | $4,500 |
| Kenneth Elzinga | 3/10/2017 | 11.0 for "research and deposition" (5.0 will be allocated to deposition)[4] | $1,000 (less 50% paid by SuperValu, less amount subtracted for research) | $2,500 |
| Joseph Fantasia | 3/8/2017 | 7.0 | $350 (less 50% paid by SuperValu) | $1,225 |
| | | | TOTAL | $13,225 |

C&S also incurred $296.05 in allowable travel expenses for expert Kenneth Elzinga.  See Cost J. [Docket No. 1338] at 2.  Thus, total expert witness deposition fees of $13,521.05  ($13,225 plus $296.05) will be taxed against the Midwest Plaintiffs.

**C.  SuperValu's Cost Judgments**

Motions for review of SuperValu's Cost Judgments have been filed by SuperValu, Village Market, and jointly by DeLuca's and Village Market.

---

[4]The time entry for Kenneth Elzinga's deposition charges 11 hours for "research and deposition," but does not allocate how much time was for each.  See Hochstadt Decl. at 25.  The Court will allocate 5 hours to time spent in the deposition.

### 1. DeLuca's and Village Market's Joint Motion for Review

DeLuca's and Village Market argue that when SuperValu entered into the Settlement Agreement with D&G and the Champaign Non-Arbitration Class in 2017, SuperValu agreed to bear its own costs, and in doing so relinquished its right to recover its pre-2013 costs against any plaintiff, including DeLuca's and Village Market. According to DeLuca's and Village Market, SuperValu received full satisfaction of its pre-2013 costs in the form of D&G and the Champaign Non-Arbitration Class' dismissal of their claims against SuperValu. DeLuca's and Village Market argue that to allow SuperValu to recover their costs from them would result in SuperValu receiving a double recovery.

SuperValu argues that the settlement was with D&G and the Non-Arbitration Class only, and that SuperValu is free to pursue the full amount of its costs expended in this litigation against non-settling parties. SuperValu notes that the "Interpretation" clause of the Settlement Agreement states that "[n]othing expressed or implied in this Agreement is intended or shall be construed to confer upon or give any person or entity other than Class Members, Releasing Parties, and Released Persons any right or remedy under or by reason of this Agreement." Settlement Agreement ¶ III.E. SuperValu contends that since DeLuca's and Village Market are not Class Members, Releasing Parties, or Released Persons as defined in the Agreement, they cannot be beneficiaries of SuperValu's release of its right to seek costs against D&G. SuperValu further argues that it has not recovered any of its costs in this litigation, so recovering from Village Market and DeLuca's jointly and severally does not result in a double recovery.

The parties have not cited (and this Court has not found) precedent in the Eighth Circuit on whether costs must be apportioned where a defendant settles with one party and agrees to

bear its own costs, and later prevails against the remaining plaintiffs. However, the Federal

Circuit analyzed analogous circumstances in Ortho-McNeil Pharm., Inc. v. Mylan Labs., Inc.,

569 F.3d 1353 (Fed. Cir. 2009). In that case, the plaintiff, Daiichi Pharmaceutical Co.

("Daiichi"), sued Mylan Laboratories ("Mylan") for patent infringement relating to an antibiotic

drug called levofloxacin. Id. at 1355. Discovery in that action was conducted jointly with a

separate levofoxacin-related action by Daiichi against Teva Pharmaceuticals, Inc. ("Teva") in a

different district court. Id. Depositions of Daiichi's witnesses were taken jointly by Mylan and

Teva, and the depositions were necessary in both the Mylan and Teva actions. Id. at 1356.

Daichii reached a settlement agreement with Teva in which Daichii agreed not to seek

recovery of its costs in the Teva case in exchange for Teva's agreement not to appeal the district

court's grant of summary judgment to Daiichi. Id. Daiichi later prevailed in its suit against

Mylan, and the district court awarded all of the shared deposition costs to Daiichi.

Mylan appealed, arguing that "Daiichi effectively received half of the shared costs when

it settled with Teva, waiving actual payment of the costs in return for Teva forgoing an appeal."

Id. at 1356–57. Daiichi argued that the district court's award of all of the costs was appropriate

because Daiichi did not receive its actual costs in the Teva action. Id. at 1356.

The Federal Circuit recognized the default rule that losing parties are jointly and

severally liable for cost awards. Id. at 1357. However, the court further explained that "[a]ny

such award, whether apportioned or awarded jointly and severally, is subject to the usual

limitation that the prevailing party may receive only one satisfaction of costs; that is, he cannot

recover more than his total entitlement." Id. (quotations omitted). The court determined that

Daiichi had effectively already recovered some of its costs from Teva, because even though Teva

did not pay costs in cash, the costs in the Teva action "were unquestionably taken into account by the parties' settlement, in which Daiichi agreed not to seek actual payment of costs as consideration for Teva forgoing its appeal." Id. at 1358. The Federal Circuit concluded that since Daiichi had recovered the value of some of its costs from Teva in the form of a foregone appeal, Daiichi could not "recover more than its total entitlement by obtaining those same costs again from Mylan." Id. The cost judgment was thus vacated and the case was remanded to the district court to apportion the shared deposition costs. Id.

As in Ortho-McNeil, there is no dispute that the pre-2013 discovery taken in this case was necessary and beneficial to both the Midwest and New England Plaintiffs. When SuperValu settled with D&G and the Champaign Non-Arbitration Class, costs were taken into account in the Settlement Agreement, because SuperValu's agreement not to seek payment of costs served in part as consideration for D&G and the Champaign Non-Arbitration Class releasing their claims. Since SuperValu has recovered some of those costs in the form of released claims, it cannot now recover more than its total entitlement by obtaining a full cost judgment from DeLuca's and Village Market.

Thus, a pro rata reduction of SuperValu's costs is required to account for the share of costs that SuperValu recovered from D&G and the Champaign Non-Arbitration Class. Under the circumstances here, where the Midwest and New England Plaintiffs' antitrust claims were identical and the pre-2013 discovery was conducted on behalf of all Plaintiffs, it is reasonable to apportion the costs equally between Midwest Plaintiffs D&G and the Champaign Non-Arbitration Class on one hand, and Village Market and DeLuca's on the other hand. Thus, to the extent that the costs requested in SuperValu's 2013 Bill of Costs are taxable, Village Market and

DeLuca's will be jointly and severally liable for one half of those costs, and the other half is deemed to have been satisfied by SuperValu's Settlement Agreement with D&G and the Champaign Non-Arbitration Class. SuperValu's Cost Judgments will be amended to reflect this pro rata allocation.

### 2. Village Market's Motion for Review

Village Market argues that the Cost Judgment related to SuperValu's 2018 Bill of Costs included expenses that should not have been awarded.

#### a. Fees for Transcripts

Village Market argues that the Clerk erred in taxing transcript fees against Village Market for court reporting services relating to five depositions taken in 2016 and one deposition taken in 2018. Village Market argues that the costs of the 2016 depositions, which total $2,526.35, were discharged under the Settlement Agreement in 2017. Village Market also contends that court reporter charges for the 2018 deposition were excessive.

The $2,526.35 in costs associated with the 2016 depositions were incurred at a time when SuperValu was defending against identical claims by the Midwest and New England Plaintiffs. Thus, half of these costs ($1,263.18) were discharged under the November 2017 Settlement Agreement. The Court has reviewed the costs associated with the 2018 deposition and concludes they were correctly taxed and are not excessive. Thus, SuperValu's Cost Judgment related to its 2018 Bill of Costs will be amended to tax transcript fees of $5,861.32. This amount represents the costs initially awarded ($7,124.50) minus the costs discharged under the Settlement Agreement ($1,263.18).

### b. Fees for Copies

Village Market also argues that some of the copying costs of $513.09 awarded against it were discharged in SuperValu's Settlement Agreement. Village Market thus contends it should only have been taxed for $219.78 for paper copies requested in SuperValu's 2018 Bill of Costs. Village Market does not specifically identify the charges it contends were incurred for SuperValu's litigation with the Midwest. Upon reviewing SuperValu's 2018 Bill of Costs, the Court finds that $264.69 was charged for making paper copies of a joint motion [Docket No. 655] by SuperValu and C&S for a limited stay of the litigation pending resolution of two appeals in the Eighth Circuit. This joint motion was necessary to SuperValu's defense against Plaintiffs in the Midwest as well as New England. Thus, half of the copy charges related to this motion ($132.35) were discharged in the Settlement Agreement. SuperValu's Cost Judgment related to its 2018 Bill of Costs will be amended to tax paper copying charges of $380.74 ($513.09 – $132.35) against Village Market.

### 3. SuperValu's Motion for Review

### a. Electronically Stored Information Costs

The Clerk denied $104,417.82 for ESI-related expenses requested in SuperValu's 2013 Bill of Costs. See Taxation Costs Summary [Docket No. 1340, Attach. 1] at 2. The costs were denied because "[f]ees incurred to produce documents for plaintiffs are not taxable by the clerk." Id. SuperValu argues that the ESI costs were for services similar to exemplification or copying, and are thus allowable under 28 U.S.C. § 1920(4).

SuperValu seeks recovery of the following ESI costs: "(1) processing electronic data to exemplify the required metadata fields, (2) converting electronic files into TIFF images (the

format required for production to opposing counsel), (3) scanning paper documents for exemplification, (4) OCR'ing documents, and (5) coding paper documents to include the required metadata fields (e.g., data capture)." McElroy Decl. [Docket No. 439, Attach. 1] at 5.

Although SuperValu argues the ESI costs are were incurred for the "exemplification" of electronic data, SuperValu uses this term broadly and generically, rather than giving it the narrow construction adopted by courts when interpreting § 1920(4). See SuperValu's Mem. Supp. Mot. Review [Docket No. 1342] at 5 (stating SuperValu is seeking "ESI costs related to exemplification of electronic data"). SuperValu has not identified ESI costs relating to the production of illustrative evidence or the authentication of public records costs. Thus, the ESI costs are not taxable as fees for "exemplification." See Country Vintner, 718 F.3d at 262 (holding that ESI processing charges did not qualify as fees for exemplification because the "charges include[d] neither authentication of public records nor exhibits or demonstrative aids").

SuperValu also argues that its ESI expenses are taxable as costs of "making copies." Of the ESI-related costs requested by SuperValu, $38,095.02 was for (1) the conversion of native files to TIFF images, which is the format agreed to by the parties in their discovery protocol, and (2) scanning documents to create digital duplicates. See McElroy Decl. Ex. D at 2–3, 13.[5] As discussed above, expenses for these activities qualify as costs of "making copies." Race Tires, 674 F.3d at 167. Village Market and DeLuca's one-half share of the expenses is $19,047.51, and they are jointly and severally liable for this amount.

SuperValu's remaining ESI expenses were for "ESI Processing" and coding paper

---

[5] These services include: TIFF Processing ($26,510.00); Image Conversion ($1,863.38); OCR ($2,356.70); and scanning ($7,364.94).

documents. Coding paper documents is not taxable because it is a preparatory step that falls outside the purview of "making copies." "ESI Processing" is a broad term, and SuperValu provides no explanation of the tasks performed in this subset of costs. The underlying invoices offer no further insight on the nature of the ESI processing charges or whether the processing amounted to making copies in the agreed-upon format. See, e.g., McElroy Decl. Ex. D (showing invoices for charges broadly described as "Electronic Data Discovery" and "ESI Gross GB Processing"). Thus, the costs for "ESI Processing" are not described with sufficient specificity to support a determination that the services charged amounted to making copies in the agreed-upon format. DVD-Rental Antitrust Litig., 779 F.3d at (holding that a request for taxation of ESI costs "must be described and established with sufficient specificity, particularity, and clarity as to permit a determination that costs are awarded for making copies.").

Accordingly, the Court will award $19,047.51 for ESI-related expenses requested in SuperValu's 2013 Bill of Costs as the costs of making copies. Together with the $1,078.74 awarded for paper copies, SuperValu's total award for costs for copies based on its 2013 Bill of Costs is $20,126.25.

### b. Expert Deposition Fees

The Cost Judgments for SuperValu limited the taxation of expert witness fees to the statutory appearance fee of $40 per day. The Clerk denied the remainder of SuperValu's claimed expert deposition fees because "[e]xpert witness fees beyond that of the statutory appearance fee and allowable travel expenses are not taxable by the clerk." Taxation Costs Summary [Docket No. 1339, Attach. 1] at 2; Taxation Costs Summary [Docket No. 1340, Attach. 1] at 2. SuperValu argues it should have been awarded all of its expert witness

deposition fees[6] because such fees are recoverable under Federal Rule of Civil Procedure 26(b)(4)(E).

As discussed above, reasonable expert fees for responding to discovery are recoverable under Rule 26(b)(4)(E)(i).  Thus, SuperValu is entitled to recover its expert deposition fees to the extent the fees are reasonable.

Resisting this conclusion, Village Market claims that its counsel and SuperValu's counsel had a conversation in early January 2018 in which they orally agreed that each party would compensate its own experts for the cost of their depositions.  Village Market thus contends that SuperValu's 2018 expert depositions are not taxable to Village Market.  Counsel for SuperValu denies that such an agreement extended to bearing the ultimate cost of the expert depositions.  SuperValu's counsel contends that during the January 2018 conversation, Village Market's counsel asked whether the experts would be invoicing opposing parties directly for fees and costs incurred in their depositions, and SuperValu's counsel responded that the practice in the case had been for experts to invoice their own clients directly for all fees.  SuperValu's counsel states that this arrangement was never intended to waive the right to seek expert fees later in a bill of costs.  SuperValu's counsel further avers that he never told Village Market's counsel that expert witness fees would not be included in a bill of costs.  Village Market's evidence and argument regarding the purported agreement is insufficient for the Court to conclude that such an agreement existed.  Thus, the purported agreement is not a basis for denying expert witness deposition fees.

---

[6] SuperValu requested $22,601.24 in its 2013 Bill of Costs and  $111,229.50 in its 2018 Bill of Costs.  See Cost J. [Docket No. 1340] at 1.

Village Market and DeLuca's also argue that SuperValu's expert witness fees are unreasonable. The Court agrees that the fees are excessive and will limit them to the experts' time spent in deposition and not preparation time.

SuperValu is awarded $1,462.50 for expert witness deposition fees requested in its 2013 Bill of Costs. These fees constitute half of the costs charged to SuperValu for the time expert John Johnson spent being deposed on March 2, 2012.[7] See Beane Decl. [Docket No. 1317, Attach. 1] Ex. E at 3.[8] Village Market and DeLuca's are jointly and severally liable for this amount.

SuperValu is also awarded expert witness deposition fees in its 2018 Bill of Costs of $9,050 as shown in the table below. See Beane Decl. Ex. E at 4, at 14, 20, 30. Village Market is solely liable for this amount.

| Name | Deposition Date | Hours Billed | Rate | Total |
| --- | --- | --- | --- | --- |
| Joseph Fantasia | 1/19/2018 | 8.0 | $350 (less 50% billed to C&S) | $1,400 |
| Parker Normann | 1/24/2018 | 4.5 | $600 | $2,700 |
| Kenneth Elzinga | 1/26/2018 | 4.5[9] | $1,100 | $4,950 |
| | | | TOTAL | $9,050 |

---

[7]The other half of the costs charged to SuperValu for this deposition was satisfied through SuperValu's Settlement Agreement with D&G and the Champaign Non-Arbitration Class.

[8] The page reference is to CM/ECF number in top right corner of page.

[9]The time entry for Kenneth Elzinga's deposition charges 10 hours for "research and deposition," but does not allocate how much time was for each. See Beane Decl. Ex. E at 4, 30 (page references are to CM/ECF page number in top right corner). Village Market states that the duration of the deposition was 4 1/2 hours, and the Court will use this figure in taxing fees. See DeLuca's and Village Market's Reply [Docket No. 1379] at 24 (page reference is to number at bottom of page).

# IV. CONCLUSION

Based on the foregoing, and all the files and records herein, IT IS HEREBY

ORDERED:

1.  SuperValu's Motion for Review of Cost Judgments [Docket No. 1341] is **GRANTED IN PART and DENIED IN PART**;

2.  C&S' Motion for Review of Cost Judgments [Docket No. 1345] is **GRANTED IN PART and DENIED IN PART**;

3.  DeLuca's Motion for Review of Cost Judgment [Docket No. 1351] is **DENIED**;

4.  Village Market's Motion for Review of Cost Judgment [Docket No. 1358] is **GRANTED IN PART and DENIED IN PART** as specified above;

5.  Village Market and DeLuca's Joint Motion for Review of Cost Judgment [Docket No. 1363] is **GRANTED IN PART and DENIED IN PART** as specified above;

6.  C&S' Cost Judgment [Docket No. 1337] against the Midwest Plaintiffs and DeLuca's Inc. is amended to award costs as follows:

    | | |
    |---|---|
    | Fees of the clerk: | $400.00 |
    | Fees for transcripts: | $24,214.90 |
    | Fees for copies: | $50,079.62 |
    | Expert witness deposition fees: | $2,925.00 |

7.  C&S' Cost Judgment [Docket No. 1338] against the Midwest Plaintiffs is amended to award costs as follows:

    | | |
    |---|---|
    | Fees for transcripts: | $43,471.51 |
    | Fees for witnesses: | $5,792.85 |
    | Fees for copies: | $16,203.31 |
    | Expert witness deposition fees: | $13,521.05 |

8.  SuperValu's Cost Judgment [Docket No. 1339] against Village Market is amended to award costs as follows:

    | | |
    |---|---|
    | Fees for transcripts: | $5,861.32 |
    | Fees for copies: | $380.74 |
    | Expert witness deposition fees: | $9,050.00 |

9.      SuperValu's Cost Judgment [Docket No. 1340] against Village Market and DeLuca's is amended to award costs as follows:

| | |
|---|---|
| Fees for transcripts: | $17,051.64 |
| Fees for copies: | $20,126.25 |
| Expert witness deposition fees: | $1,462.50 |

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

BY THE COURT:


     s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated: February 1, 2019.